JOHN J. SANSONE, County Counsel
Answering Defendant of San Diego
By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
1600 Pacific Highway, Room 355
San Diego, CA 92101
Telephone: (619) 531-5244
james.chapin@sdcounty.ca.gov
Attorneys for Defendant William D. Gore

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PERUTA,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF,<br><br>  Defendants. | USSD No. **09-CV-2371 IEG (BLM)**<br><br>**DEFENDANT WILLIAM D. GORE'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br>[Fed.R.Civ.P., 12(b)(6)]<br><br>Date: December 21, 2009<br>Time: 10:30 a.m.<br>Dept: 1 – Courtroom of the<br>       Hon. Irma E. Gonzalez |

**I**

**INTRODUCTION**

Plaintiff alleges that he was denied a permit to carry a concealed weapon by the Sheriff's Department because he was not a resident of San Diego County and because he did not show good cause. (Complaint ¶ 36.) The Complaint challenges California Penal Code section 12050 on the grounds that it violates the Second Amendment, the Equal Protection clause, and the constitutional right to travel. Plaintiff admits that he is not a resident of San Diego County, having simply rented space at a temporary campground, Campland on the Bay, in San Diego for five months combined in 2008 and 2009 and for three months in 2007. (Complaint, ¶ 18.) He further alleges as good cause for a

1

09-CV-2371 IEG (BLM)

concealed weapons permit that he travels extensively with cash and valuables, often in rural areas, and that he places himself in high crime areas to gather news. He challenges the "residency," "good cause" and "moral character" provisions of the statute and their application to him. (Complaint, ¶¶ 30-39.) He does not allege that his application was denied on lack of moral character grounds. Penal Code sections 12050-12054 are filed herewith as Exhibit "A."

## II

## THERE IS NO CONSTITUTIONAL RIGHT TO CARRY CONCEALED WEAPONS IN PUBLIC

Plaintiff's first cause of action alleges that the statutory "county residency" and "good cause" requirements violate his right to bear arms under the Second Amendment. Recently, the United States Supreme Court, in *District of Columbia v. Heller,* 554 U.S. __; 128 S. Ct. 2783; 171 L.Ed.2d 637 (2008), in the course of invalidating a prohibition by the District of Columbia on the possession of usable handguns in the home, announced that the Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation, self-defense, or other traditionally lawful purposes, unconnected with service in a militia. A majority of the court held "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any *lawful firearm in the home operable for the purpose of immediate self-defense*." *Heller,* 554 U.S. at __; 171 L.Ed.2d at 683 (italics added).

The court emphasized that "the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right [to keep and bear arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at __; 171 L.Ed.2d at 678. Although the court declined to adopt a level of scrutiny to be imposed upon Second Amendment restrictions or specify the limitations the government may place on an individual's right to possess firearms, a nonexclusive list of the many

1 "presumptively lawful regulatory measures" was enumerated. *Heller* at ___, n. 26; 171 L.Ed.2d at 678, n. 26. The court declared:

> [T]he majority of the 19th-century courts to consider the question held that *prohibitions on carrying concealed weapons were lawful* under the Second Amendment or state analogues. [Citations.] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [¶] We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those "in common use at the time." [(*United States v. Miller* (1939) 307 U.S. 174, 179 [83 L. Ed. 1206, 59 S. Ct. 816].)] We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons." [Citations.]

*Heller,* at ___–___ ; 171 L.Ed.2d at 678–679 (fn. omitted, italics added).

Penal Code section 12050 does not regulate the possession of a gun in the home for lawful purposes of confrontation or self-defense, as did the law declared unconstitutional in *Heller*. Rather, it involves the regulation of the carrying of concealed weapons in public places. Further, carrying a firearm concealed on the person or in a vehicle is not in the nature of a common use of a gun for lawful purposes which the court declared to be protected by the Second Amendment in *Heller*. Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized "threat to public order," and is "'prohibited as a means of preventing physical harm to persons other than the offender.' [Citation.]" *People v. Hale*, 43 Cal. App. 3d 353, 356 (1974). A person who carries a concealed firearm on his person or in a vehicle, "which permits him immediate access to the firearm but impedes others from detecting its presence, poses an 'imminent threat to public safety ….' [Citation.]" *People v. Hodges,* 70 Cal. App. 4th 1348, 1357 (1999).

Rather than cast any doubt upon the continued constitutional validity of concealed weapons bans, the *Heller* opinion specifically expressed constitutional approval of the accepted statutory proscriptions against carrying concealed weapons. *Heller,* 554 U.S. ___, ___ ; 171 L.Ed.2d at 678. Thus, in the aftermath of *Heller*, the prohibition "on the

carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment." *United States v. Hall* (S.D.W.Va., Aug. 4, 2008, No. 2:08-00006) 2008 U.S.Dist. Lexis 59641, *3; *People v. Yarbrough*, 169 Cal. App. 4th 303, 309 (2008).

## III

## THE COMPLAINT FAILS TO ALLEGE
## A VIOLATION OF EQUAL PROTECTION

Plaintiff's second claim asserts a violation of equal protection by application of the residency and good cause requirements. Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). If dissimilarly situated persons are treated differently, there is no equal protection violation. *E & T Realty v. Strickland*, 830 F. 2d 1107, 1109 (11th Cir. 1987). When a government's action does not involve a suspect classification or implicate a fundamental right, even intentional discrimination will survive constitutional scrutiny for an equal protection violation as long as it bears a rational relation to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976); *Cleburne*, 473 U.S. at 439; *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990). Weapons permit applicants do not constitute a protected class.

Because Plaintiff is not a member of a suspect class or quasi-suspect class and no fundamental right is involved, he must show how he was treated differently than others similarly situated. After making this showing, his allegations must establish that the Sheriff intentionally discriminated against him and that there was no rational basis for doing so. Plaintiff's allegations are simply that he should be considered a resident of the County of San Diego because of his occasional visits here and that he has shown good cause by stating that he voluntarily places himself in situations and places he perceives as placing him at risk.

Furthermore, there can be no equal protection violation where state action bears a rational relation to a legitimate state interest. *Armendariz v. Penman,* 75 F. 3d 1311, 1326 (9th Cir. 1996). The actions must be "malicious, irrational or plainly arbitrary" to sustain an equal protection claim. *Id.*, quoting *Lockary*, 917 F. 2d at 1156. The statute that establishes the procedures and the actions of the Sheriff in carefully screening those who are permitted to carry concealed weapons in public can hardly be characterized as irrational.

## IV

## THE CONCEALED WEAPONS PERMIT PROCESS DOES NOT IMPLICATE THE CONSTITUTIONAL RIGHT TO TRAVEL

Plaintiff's final claim is that the concealed weapons permit process violates his constitutional right to travel. A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective or when it uses any classification which serves to penalize the exercise of that right. *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). State restrictions on concealed weapons fall into none of those categories. Plaintiff is free to travel without carrying concealed weapons.

## CONCLUSION

The Complaint fails to state a claim on any constitutional ground. Plaintiff has a remedy in state court to challenge the determination of the Sheriff's Department by writ proceeding. This motion to dismiss should be granted without leave to amend.

DATED: November 12, 2009         Respectfully submitted,

JOHN J. SANSONE, County Counsel

By: s/ JAMES M. CHAPIN, Senior Deputy
Attorneys for Defendant William D. Gore