# EXHIBIT A

1  C.D. Michel – SBN 144257
   Clint B. Monfort - SBN 255609
2  Sean A. Brady - SBN 262007
   cmichel@michellawyers.com
3  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
4  Long Beach, CA 90802
   Telephone: (562) 216-4444
5  Facsimile:   (562) 216-4445
   www.michellawyers.com
6  Attorneys for Plaintiffs / Petitioners

7  Paul Neuharth, Jr. (State Bar #147073)
   pneuharth@sbcglobal.net
8  PAUL NEUHARTH, JR., APC
   1440 Union Street, Suite 102
9  San Diego, CA 92101
   Telephone: (619) 231-0401
10 Facsimile:   (619) 231-8759
   Attorney for Plaintiff / Petitioner EDWARD PERUTA

11

12              IN THE UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15 EDWARD PERUTA, MICHELLE          )   CASE NO: 09-CV-2371 IEG (BLM)
   LAXSON, JAMES DODD, DR.          )
16 LESLIE BUNCHER, MARK             )   FIRST AMENDED COMPLAINT
   CLEARY, and CALIFORNIA RIFLE     )   [PROPOSED]
17 AND PISTOL ASSOCIATION           )
   FOUNDATION                       )   42 U.S.C. sections 1983, 1988
18                                  )
              Plaintiffs,           )
19                                  )
          v.                        )
20                                  )
   COUNTY OF SAN DIEGO,             )
21 WILLIAM D. GORE,                 )
   INDIVIDUALLY AND IN HIS          )
22 CAPACITY AS SHERIFF,             )
                                    )
23            Defendants.           )
   _____)

24        NOW COME Plaintiffs, by and through the above Counsel, and allege

25 against Defendants as follows:

26 / / /

27 / / /

28 / / /

                                  1

# INTRODUCTION

1. Twenty-five years ago, a committee of the California Assembly found disarray in the issuance of concealed weapons permits ("CCW") by local government entities in California: "permit standards often are nonexistent or unclear; the key standards for issuance are undefined and their interpretation is highly discretionary; and many jurisdictions have no written policies."[1]

2. In June 2008, the United States Supreme Court held that the Second Amendment to the United States Constitution protects a fundamental, individual right to keep, and to bear, arms for self defense. *District of Columbia v. Heller,* 128 S.Ct. 2783 (2008).

3. When considering an application for a CCW, the standards Defendants have set are so high they are illegal and unconstitutional. Defendants do not consider this constitutionally guaranteed right to self-defense to be sufficient to meet the "good cause" required by California law for the issuance of a permit.

4. Further, Defendants deny many CCW applications from those who maintain an address and residence in San Diego on grounds that such applicants do not meet the statutory residency requirement.

5. The fundamental individual right to bear arms for self-defense does not end at the doorstep to one's home. Plaintiffs seek equitable and declaratory relief to that effect, to compel Defendants to articulate and adopt a constitutional policy regarding the issuance of CCW licenses, and to review CCW applications, determine residency, and issue CCW licenses in a manner consistent with California law, and with the United States Constitution.

/ / /

/ / /

---

[1] Abstract to SMOKING GUN – THE CASE FOR CONCEALED WEAPON PERMIT REFORM, http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=104228.

2

**PARTIES**

**[Plaintiffs]**

6. Plaintiff Edward PERUTA is a natural person, a citizen of the United States and of the State of California, and a resident of San Diego County, California.

7. PERUTA maintains a residence in San Diego County. Plaintiff maintains a permanent mailing address in San Diego, California, and PERUTA and his wife keep a room in San Diego in which they keep a wardrobe and other personal items.

8. PERUTA and his wife reside in San Diego in a motor home for extended periods of time. PERUTA reserved space at Campland on the Bay, in San Diego, California, from November 15, 2008 through April 15, 2009. PERUTA has also previously reserved space at the same place for months at a time.

9. PERUTA is the founder and sole stockholder of *American News and Information Services, Inc.*, a news and information company that operates throughout the United States, and which gathers and provides raw, breaking news video, photographs, and news tips to various mainstream media outlets.

10. As part of PERUTA's media duties and employment, he often enters high crime areas. This puts him at risk of criminal assault and in need of a firearm to defend himself. In pursuing his occupation, PERUTA and his wife travel extensively throughout the United States in their motor home, carrying large sums of cash, valuables and equipment, making them a target for violent crimes.

11. As part of PERUTA's travels, he and his wife often find it necessary to stay in remote rural areas of the United States, including California, where law enforcement personnel are frequently unavailable.

12. In November 2008, PERUTA requested a CCW application form from the San Diego County Sheriff's License Division. At that time he was interviewed by a licensing supervisor to determine whether he satisfied the Defendants' licensing criteria. Basically, he had to first apply to get an official application form

3

1  before he could actually apply for a CCW.

2      13.  In February 2009, PERUTA submitted an application for a CCW.

3  PERUTA provided the required eight (8) hour Firearms Safety and Proficiency

4  Certificate (California Penal Code § 12050(E)(I)).

5      14.  PERUTA is eligible to possess firearms.

6      15.  PERUTA was denied a CCW by Defendants upon a finding by the San

7  Diego County Sheriff's licensing division that Plaintiff did not have "good cause"

8  and was not a "resident" of San Diego County.

9      16.  Defendants deemed that PERUTA did not have "good cause" because

10  PERUTA, beyond a desire to exercise his Second Amendment right to bear arms in

11  self-defense, could not document a more specific demonstrable threat of harm as a

12  primary reason for desiring a CCW license.

13      17.  Defendants also found that PERUTA is not a San Diego county resident

14  because his residence is his mobile home.

15      18.  PERUTA appealed this denial as far as possible administratively.

16      19.  Re-submission of an application would be futile.

17      20.  Plaintiff Michelle LAXSON is a 26-year-old natural person, a citizen of

18  the United States and of the State of California, and a resident of San Diego

19  County, California.

20      21.  Plaintiff LAXSON owns her own hairdressing business.

21      22.  LAXSON wishes to have a CCW for self-defense because her work

22  requires her to travel alone and to carry large amounts of cash, sometimes at night,

23  and often through neighborhoods known to have a heightened level of crime.

24      23.  LAXSON applied for a CCW on or about January 25, 2010, but was told

25  that same day that a CCW license would not be issued for failure to establish "good

26  cause" as determined and required by Defendants.

27  / / /

28  / / /

4

24.  LAXSON is legally qualified to possess a firearm and, other than the supposed inadequacy of her "good cause," can satisfy the legal requirements for issuance of a CCW.

25.  LAXSON is involved in the community through various charities to which she devotes time or money, including Mama's Kitchen, the YMCA, Child Help, Friends of Scott, Locks of Love, the Zoological Society, and various local school events and fundraisers. She is an active member in her local church.

26.  But for her lack of a CCW, LAXSON would carry a concealed, loaded firearm in public for self-defense.

27.  Plaintiff James DODD is a 67-year-old natural person, a citizen of the United States and of the State of California, and a resident of San Diego County, California.

28.  Plaintiff DODD is a retired Navy Officer. He served in the Navy for 22 years, and served two combat tours of duty in the Vietnam War.

29.   Apart from his military career, Plaintiff DODD has received extensive firearms training from shooting schools such as Gunsite and Front Sight.

30.  Plaintiff DODD also took a CCW class in San Diego on or about July 26, 2000, in anticipation of applying for a CCW from Defendant San Diego County.

31.   Plaintiff DODD desires a CCW to exercise his Second Amendment right to bear arms in self-defense.  At his age, he is less physically capable of defending himself, and his wife, from violent crime without a firearm. Upon requesting an application for a CCW in early August 2000, Plaintiff DODD was told by the Sheriff's Department that he would be wasting $200 by applying because Defendants would not issue Plaintiff DODD a CCW because he did not have "good cause." DODD was informed that filing a formal application and paying the associated fees was a waste of time and money because he did not have "good cause" to obtain a CCW.

32.  But for the Defendants instructing him that he did not qualify for and would not be issued a CCW license, Plaintiff DODD would have formally applied for a CCW license.

33.  Plaintiff Doctor Leslie BUNCHER is a 71 year old natural person, a citizen of the United States and of the State of California, and a resident of San Diego County, California.

34.  Plaintiff Dr. BUNCHER is retired after working as a medical physician for approximately thirty (30) years.  Part of Dr. BUNCHER's medical practice involved him performing abortions.

35.  Because of the socially controversial nature of Dr. BUNCHER's practice, he was the target of various threats to his well-being.  Dr. BUNCHER has had anti-abortion protestors enter his office, and has received threatening electronic mails and letters calling him a murderer and telling him to repent.

36.  Dr. BUNCHER obtained a CCW from one of Defendant GORE's predecessors in the early 1970's and maintained it for decades. Dr. BUNCHER failed to timely renew his CCW. Sometime after it expired he went to the Sheriff's station and inquired about reapplying for a new CCW. He was told by defendants' employees that he would not be issued a permit if he applied because he was no longer practicing medicine and thus lacked "good cause."

37.  Upon being told he would be rejected, Dr. BUNCHER nonetheless returned days later with evidence of specific threats that continued to be made against him and other doctors. Dr. BUNCHER showed Defendants that his name and address remained available on the internet as a doctor associated with abortions.  He then officially applied for a CCW license, but was nonetheless denied on September 28, 2008.

38.  Defendants sent the Doctor a Denial Letter stating that the documentation he provided did not support a showing of good cause, and that "fear alone" does not constitute "good cause."

6

1    39.  Dr. BUNCHER served in the military as a Military Police officer and

2  taught shooting courses at the Military Police Academy.

3    40.  Dr. BUNCHER presently volunteers as a reserve officer for the Humane

4  Society and a reserve officer for the Chula Vista Police Force, Mounted Division.

5  As a reserve officer he is permitted access to areas deemed fire-dangers and closed

6  to the public.

7    41.  Dr. BUNCHER wishes to have a CCW to defend himself and his wife

8  from violent crime in general, and specifically from individuals who have

9  threatened him in the past because he performed pregnancy terminations.

10    42.  But for his lack of a CCW, Dr. BUNCHER would carry a concealed,

11  loaded firearm in public for self-defense on occasions he deemed appropriate.

12    43.  Plaintiff Mark CLEARY is a 58-year-old natural person, a citizen of the

13  United States and of the State of California, and a resident of San Diego County,

14  California.

15    44.   Plaintiff CLEARY is a registered nurse at a hospital in San Diego

16  County. As part of his employment, Plaintiff CLEARY must tend to patients who

17  are deemed legally insane pursuant to the California Welfare and Institutions Code,

18  and who are often dangerous to themselves and others.

19    45.  Plaintiff CLEARY has worked with mentally ill patients since 1994. He

20  worked between 1999 and 2008 throughout Southern California, including San

21  Diego County, conducting mental health evaluations of patients pursuant to

22  California Welfare and Institutions Code section 5150.  During his career, Plaintiff

23  CLEARY was subjected to several death threats from patients. He has filed six

24  police reports to Defendants documenting some of these threats.

25    46.  Plaintiff CLEARY continues to work with mentally ill patients in a lock-

26  down facility where he has worked since 2007.

27  / / /

28  / / /

7

47.  Plaintiff CLEARY wishes to have a CCW for self-defense against his past and present patients, and the ones he will surely tend to in the future, who suffer from mental illness and many of whom have a history of being dangerous to others.

48.  Plaintiff CLEARY was originally issued a CCW by Defendants in November of 2005 after being denied previously. The CCW was issued to Plaintiff CLEARY only after he became a member of the Honorary Deputy Sheriff's Association in San Diego County and made a request for reconsideration of his application to Defendant GORE personally.

49.  Defendants granted his renewal application for a CCW in November of 2007 while he was working at the same hospital where he is currently employed. At that time, Plaintiff CLEARY remained a member of the Honorary Deputy Sheriff's Association.

50.  On or about November 23, 2010, Plaintiff CLEARY submitted an application for a renewal of his CCW.

51.  Plaintiff CLEARY ceased being a member of the Honorary Deputy Sheriff's Association in December of 2009 after he stopped paying his membership dues.

52.  In January 2010, Plaintiff CLEARY spoke with Jerry Quinlin of Defendant GORE's office, who requested additional documentation from Plaintiff CLEARY, including a letter from CLEARY's supervisor.  When Plaintiff CLEARY explained that he feared losing his job by making such a request of his supervisor and that Defendants already had a letter from the same employer for his previous application, Mr. Quinlin told Plaintiff CLEARY that he could withdraw his CCW application.

/ / /

/ / /

/ / /

53.  Plaintiff CLEARY refused to withdraw his CCW application and reminded Defendants of the police reports he had filed involving threats from his past patients and that he still worked at the same hospital from which he already submitted a letter illustrating the type of patients he tends to.  Plaintiff CLEARY presented his current hospital identification as evidence of his employment there, and offered to present paycheck stubs.

54.  On March 17, 2010, Defendants denied Plaintiff CLEARY's renewal application for failure to establish "good cause."

55.  But for his lack of a CCW, Plaintiff CLEARY would carry a concealed, loaded firearm in public for self-defense on appropriate occasions.

56.  Plaintiff CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION ("CRPA FOUNDATION") is a non-profit entity classified under section 501(c)(3) of the Internal Revenue Code and incorporated under California law, with headquarters in Fullerton, California.

57.  Contributions to the CRPA FOUNDATION are used for the direct benefit of Californians. Funds contributed to and granted by the Foundation benefit a wide variety of constituencies throughout California, including gun collectors, hunters, target shooters, law enforcement, and those who choose to own a firearm to defend themselves and their families. The CRPA FOUNDATION seeks to: raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms.  The CRPA FOUNDATION supports law enforcement and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

/ / /

/ / /

9

58.  In this suit, the CRPA FOUNDATION represents the interests of its many citizen and taxpayer members and members of its related association the California Rifle and Pistol Association who reside in San Diego and who wish to obtain CCWs, but who have been denied CCWs for supposed lack of residence, or supposed lack of "good cause," or who have been told by the Sheriff's Office not to bother applying for a CCW because of the aforesaid reasons.  These members are too numerous to conveniently bring this action individually. The CRPA FOUNDATION and the individuals whose interests are represented by the CRPA FOUNDATION are and will be affected by Defendants' failure to issue CCW licenses according to law.

### [Defendants]

59.  Defendant William GORE is the Sheriff of San Diego County. As such, he is responsible for formulating, executing and administering the laws, customs and practices that Plaintiffs challenge, and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs (and, in the case of the CRPA Foundation, those they represent). Defendant GORE is sued in his individual capacity and in his official capacity as Sheriff.

60.  Defendant San Diego County is a municipal entity organized under the Constitution and laws of the State of California.

### JURISDICTION AND VENUE

61.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331, 1343, 1367, 2201, 2202, and 42 U.S.C. section 1983.

62.  Venue lies in this court pursuant to 28 U.S.C. section 1391.

### REGULATORY SCHEME

### [California Law - Permits to Carry Concealed Firearms]

63.  With very few and very limited exceptions, California has banned the unlicensed public carrying of concealed handguns (California Penal Code § 12025), and the unlicensed public carrying of loaded firearms (California Penal

10

1  Code § 12031).  Because California does not permit the open carriage of loaded

2  firearms, concealed carriage with a CCW permit is the only means by which an

3  individual can bear arms in public places in order to exercise his or her Second

4  Amendment right to armed self-defense.

5      64.  California law allows for the issuance of a license to carry a firearm in

6  public for self-defense. In counties with small populations, an individual may

7  obtain a license to openly carry a loaded handgun. (California Penal Code §

8  12050(a)).

9      65.  Depending on the jurisdiction, in order to obtain a CCW one must

10  submit an application to either the police chief or the county sheriff ("Issuing

11  Authority") for the city or county in which the applicant either resides or spends a

12  substantial amount of time while conducting business at the applicant's principal

13  place of employment or business located in that county. (California Penal Code §

14  12050, *et seq*).

15      66.  CCW applicants must pass a criminal background check (California

16  Penal Code § 12052), and successfully complete a handgun training course.

17  (California Penal Code §12050(a)(1)(E)).

18      67.  Even if an applicant successfully completes a background check and the

19  handgun training course, a CCW is issued only if the applicant is additionally

20  found to be of good moral character and, in the discretion of the Issuing Authority,

21  has "good cause" for carrying a concealed firearm. (California Penal Code § l2050

22  (a)(l)(A), (B)).

23      68.  Because Issuing Authorities have discretion to determine whether an

24  applicant is of good moral character, and whether an applicant has "good cause"

25  for a CCW, there is little consistency among jurisdictions in establishing the

26  criteria for issuing CCWs.  That lack of consistency leads to disparate treatment of

27  similarly situated applicants by a particular Issuing Authority, or by the various

28  Issuing Authorities from jurisdiction to jurisdiction.

69.   In some counties, such as San Diego, applicants are rarely issued CCWs, but in other counties, CCWs are issued to most law-abiding, responsible adult applicants. Applicants who do receive CCWs in jurisdictions (typically urban) that do not issue CCWs liberally are often wealthy and/or politically important, friends of the Issuing Authority, or individuals who contribute to the Issuing Authority's campaign fund or to the campaign funds of other politicians. Many people lacking those "qualifications" are denied CCWs.

70.   This pattern is so pervasive that many people lacking these unofficial "qualifications" or connections generally do not waste their time or money by applying for a CCW.

### [Second and Fourteenth Amendments]

71.   The Second Amendment to the United States Constitution, by way of its incorporation into the Fourteenth Amendment, prohibits states and localities from depriving law-abiding individuals of their right both to keep and to bear arms.

72.   The inherent right of self-defense is central to the Second Amendment.

73.   The Second Amendment guarantees the right of law-abiding responsible adults to "possess and carry weapons in case of confrontation." This right includes the ability of law-abiding citizens to obtain a license to carry loaded handguns for self-defense in public.

74. States may not completely ban the carrying of handguns for self-defense, nor impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

75.   Almost all states effectively recognize the Second Amendment right to carry a handgun for self-defense by either not regulating the carrying of handguns by law-abiding citizens (*i.e.*, they do not require a license to carry a firearm in public), or by regulating only to the extent that individuals who pass a background check and complete a gun-safety program are, as a matter of course, issued a license to carry a handgun in public.

76.  In some of those states, a person needs a license to legally carry a handgun only if the person carries the handgun concealed.

## GENERAL ALLEGATIONS

### [Defendants' Issuance Policy]

77.  Defendant Sheriff William GORE has formulated and adopted, and is continuing to abuse his discretion and apply San Diego County's unconstitutional policies and standards for establishing "good cause" and "residency" when denying CCWs. Defendants' policy, to the extent it has been articulated and published publicly, is attached as Exhibit A.

78.  The Second Amendment right to bear arms, and the fundamental right to self-defense and self-preservation, are not deemed by Defendants to constitute "good cause" for the issuance of a CCW.

79.  Defendants do not actually require "residency" in San Diego County *per se* (the statutory standard). Rather, they improperly require a lack of any residency elsewhere.

80.  Plaintiffs are informed and believe and thereupon allege that Defendants sometimes issue CCWs to applicants whose "good cause" *is* credible threats of harm to self or family, or a need to transport large sums of money or valuable property, or engaging in a business or occupation that exposes the applicant to attack.  Defendants, however, issue a CCW in such circumstances only when the applicant is a personal friend of the Sheriff or of someone with influence over the Sheriff, has contributed money to the Sheriff's campaign or to the campaign of others who have influence over the Sheriff, is wealthy or otherwise politically influential, or is a public official.

81.  Plaintiffs are also informed and believe and thereupon allege that Defendants sometimes issue CCWs to applicants who do *not* have "good cause" under Defendants' standard, but who are a personal friend of the sheriff or of someone with influence over the sheriff, is a contributor of money to the sheriff's

13

1  campaign or to the campaigns of others who have influence over the sheriff; are

2  wealthy or otherwise politically influential, or is a public official.

3       82. Defendants have created a screening process whereby would-be CCW

4  applicants are required to, in essence, apply to apply for a CCW permit. Unless

5  applicants are determined to have "good cause," as defined by Defendants, during

6  the initial screening of applicants process, they are told that formally applying for a

7  CCW would be pointless and a waste of money, that they will not be issued a

8  CCW, and that they should not apply because their CCW application will be

9  denied.

10                        **[All Plaintiffs]**

11       83.  By reason of the Second Amendment, the Fourteenth Amendment's Due

12  Process Clause, the Equal Protection Clause and California Penal Code section

13  12050, each of the Defendants has "good cause" and meets the "good cause"

14  requirement for a CCW license.

15       84.  Plaintiffs also meet the residency requirements for issuance of a CCW.

16       85.  In the alternative, with respect to Plaintiff PERUTA, he is

17  constitutionally entitled to a CCW permit even if he does not meet the statutory

18  requirement of "residency" in San Diego.

19       86.  Plaintiffs meet all of the statutory criteria in California Penal Code

20  section 12050 for issuance of a CCW insofar as such criteria are constitutionally

21  valid.

22       87.  Defendants' arbitrary, capricious, and subjective interpretation and

23  application of California Penal Code section 12050's "good cause" requirement is

24  an abuse of discretion and has resulted in the illegal and unconstitutional denial of

25  CCW permits to Plaintiffs.

26       88.  There is no valid reason not to consider Plaintiffs' "good cause" and

27  residency adequate to obtain a CCW under California Penal Code § 12050.

28  / / /

1   89. But for the lack of a CCW, Plaintiffs would carry concealed weapons for

2   self-defense.

### [Right to Bear Arms]

4   90. Defendants' manner of interpreting and applying California Penal Code

5   section 12050's requirements is an abuse of discretion and infringes upon

6   Plaintiffs' right to keep and bear arms under the Second and Fourteenth

7   Amendments, which includes the right to possess and carry weapons in public for

8   self-defense in case of confrontation.

9   91. Denial of a CCW is a denial of the right to carry a firearm for

10  self-defense, a purpose guaranteed by the Second Amendment.

### [Equal Protection]

12  92. The Fourteenth Amendment to the United States Constitution provides

13  that no state shall "deny to any person within its jurisdiction the equal protection of

14  the laws."

15  93. Defendants' "good cause" and residency policies are an abuse of

16  discretion, subjective, inherently prone to abuse, and results in the unequal

17  treatment of similarly situated individuals applying for a CCW.

18  94. Many of those whose CCW applications are granted because they have

19  the "qualifications" or connections described above are otherwise similarly situated

20  to Plaintiffs, in that they too generally have no significant need or "good cause"

21  that is greater than any of Plaintiffs' self-defense needs.

22  95. Defendants' residency requirement subjects Plaintiff PERUTA and other

23  San Diego residents to unequal treatment.

24  96. Plaintiff PERUTA is a resident of San Diego County by virtue of the fact

25  that he maintains a permanent mailing address in San Diego, keeps personal

26  belongings there, and resides in San Diego County for extended periods of time.

27  / / /

28  / / /

97.  Plaintiff PERUTA should be deemed to have good cause and his application processed even if he does not meet Defendants' residency requirement because treating a person in his circumstance differently from full-time residents denies him equal protection of the laws.

98.  Plaintiff PERUTA was denied a CCW, at least in part, because the San Diego Licensing Division made a finding that Plaintiff's residency in a motor home did not meet Defendants' residency requirement.

99.  Plaintiff PERUTA was treated differently than similarly situated residents of San Diego County, at least in part, because he does not reside in San Diego County all of the time.

**[Right to Travel]**

100.  The Fourteenth Amendment and other provisions of the Constitution guarantee individuals the right to interstate travel and to change their residence from state to state.

101.  A state may not impose a penalty upon those who exercise a right guaranteed by the Constitution.

102.  Defendants reject CCW applicants, including Plaintiff PERUTA, who do not reside in San Diego County full time.

103.  Defendants base such rejections on their inconsistent, unconstitutional, and illegal interpretation and mis-application of California Penal Code section 12050's residency requirement.

104.  Defendants' policy of requiring full-time residency in San Diego County as a prerequisite to issuing a CCW is an abuse of discretion, is unauthorized by California law, and violates the right to travel guaranteed by the United States Constitution. The policy deters people, including Plaintiff PERUTA, from traveling and spending time outside of San Diego County.

/ / /

/ / /

16

**[Penal Code Section 12050]**

105.  California Penal Code section 12050 requires Defendants to issue CCWs to all responsible, law-abiding adult residents of San Diego County who have "good cause" to carry a firearm for self-defense.

106.  Defendants' policies are an abuse of discretion and unlawfully exceed California Penal Code section 12050's "good cause" requirement by inconsistently, arbitrarily, capriciously, and subjectively refusing to acknowledge that Plaintiffs have "good cause."

107.  Defendants' policies unlawfully exceed California Penal Code section 12050's "residency" requirement by refusing to acknowledge that lawful residency, even if not full time, satisfies the statutory residency requirement.

**[Privileges and Immunities - Article IV]**

108.  Article IV, section 2 of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  This clause bars discrimination against citizens of other States where no substantial reason for the discrimination exists beyond the mere fact that they are citizens of other states.

109.  Defendants deny applicants CCW applications and licenses based on lack of residency if the applicant resides in San Diego only part of the year.

110.  Defendants denied Plaintiff PERUTA a CCW based in part on the fact that he spends time in and travels to jurisdictions other than San Diego County.

**FIRST CLAIM FOR RELIEF**
**SECOND AND FOURTEENTH AMENDMENTS - RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

111.  Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein in full.

/ / /

/ / /

17

112.  By refusing to issue CCWs to individuals, including Plaintiffs, based on their subjective and unconstitutional standard of "good cause" that requires a showing beyond the need for self-defense, Defendants are abusing their discretion and propagating customs, policies, and practices that infringe on Plaintiffs' right to possess and carry firearms as guaranteed by the Second and Fourteenth Amendments.

113. Defendants cannot satisfy their burden of justifying these customs, policies, and practices that infringe on Plaintiffs' rights.

114.  Plaintiffs are entitled to permanent injunctive relief against such customs, policies, and practices.

**SECOND CLAIM FOR RELIEF**
**FOURTEENTH AMENDMENT  - EQUAL PROTECTION**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

115.  Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein in full.

116.  Plaintiff PERUTA was treated differently than other similarly situated residents of San Diego County because he resides in San Diego only part of the year.

117.  Plaintiffs were treated differently than other similarly situated CCW applicants because Plaintiffs are not politically-connected, wealthy, or contributors to the Sheriff's campaign, as are those individuals issued a CCW.

118.  By maintaining and enforcing a set of customs, practices, and policies that inconsistently and arbitrarily deny Plaintiffs a CCW based on a subjective determination of "good cause" and/or length of one's residency in San Diego, while at the same time issuing CCWs to other similarly situated individuals, Defendants are abusing their discretion and propagating customs, policies, and practices that violate Plaintiffs' rights to equal protection under the Fourteenth Amendment.

///

119. Defendants cannot satisfy their burden of justifying these customs, policies, and practices that deprive Plaintiffs equal protection under the law.

120. Plaintiffs are entitled to permanent equitable relief against such customs, policies, and practices.

**THIRD CLAIM FOR RELIEF**
**FOURTEENTH AMENDMENT - RIGHT TO TRAVEL**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

121. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein in full.

122. The residency requirement, as interpreted and applied by Defendants, deters individuals such as Plaintiff PERUTA from exercising their right to travel because the residency requirement penalizes applicants for traveling and spending time outside of San Diego.

123. San Diego's policy burdens the right to travel.

124. Defendants can neither identify a compelling state interest for demanding that individuals reside more than part time in San Diego County, nor demonstrate that the County's residency requirement is necessary to further that interest.

125. Because Defendants cannot satisfy their burden of justifying the residency requirement they impose for CCW issuance, Defendants are abusing their discretion and propagating customs, policies, and practices that violate Plaintiffs' right to travel under the Fourteenth Amendment to the United States Constitution.

126. Plaintiffs are entitled to permanent injunctive relief against such customs, policies and practices.

/ / /

/ / /

/ / /

/ / /

19

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA PENAL CODE SECTION 12050**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

127.  Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein in full.

128.  Plaintiffs meet each of the statutory qualifications for licensure under California Penal Code section 12050, but Defendants refuse to examine Plaintiffs' qualifications on their merits because Defendants' "good cause" standard requires a showing of comparatively greater hazard than those faced by other residents of the county.

129.  For example, instead of examining Plaintiff PERUTA's individual qualifications on their merits, Defendants denied Plaintiff a CCW license by reason of Defendants' unlawful policies which exclude residents if they also reside elsewhere and for all Plaintiffs require a showing of some specific threat rather than just good cause to fear being attacked in general.

130.  Defendants' CCW issuing policies exceed the scope of their discretion and abuse the discretion granted in California Penal Code section 12050, and subject Plaintiffs to irreparable harm.

131.  Plaintiffs are entitled to declaratory and equitable relief.

**FIFTH CLAIM FOR RELIEF**
**ARTICLE IV, §2 - PRIVILEGES *AND* IMMUNITIES**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

132.  Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein in full.

133.  Plaintiff PERUTA was denied a CCW based in whole or in part on his failure to satisfy Defendants' residency requirement.

134.  Such conduct by Defendants deprives Plaintiff PERUTA of the privileges and immunities of citizenship in violation of Article IV, Section 2 of the United State Constitution.

09-CV-2371 IEG (BLM)

1    135.  Defendants' policies regarding the issuance of CCW licenses are

2    unlawful and subject individuals, including Plaintiff PERUTA, to irreparable harm.

3    136.  Plaintiff PERUTA is entitled to declaratory and equitable relief.

**SIXTH CLAIM FOR RELIEF
SECOND AMENDMENT,
FOURTEENTH AMENDMENT,
AND CALIFORNIA PENAL CODE SECTION 12050
42 U.S.C. § 1983
AGAINST ALL DEFENDANTS**

8    137.  Plaintiffs hereby re-allege and incorporate by reference the allegations

9    set forth in the foregoing paragraphs as if set forth herein in full.

10    138.  Plaintiffs desire a Decree from this Court directing Defendants to

11    consider self-defense to be "good cause" for an otherwise qualified applicant to be

12    issued a CCW.

**SEVENTH CLAIM FOR RELIEF
FOURTEENTH AMENDMENT - DUE PROCESS
42 U.S.C. § 1983
AGAINST ALL DEFENDANTS**

16    139.  Plaintiffs hereby re-allege and incorporate by reference the allegations

17    set forth in the foregoing paragraphs as if set forth herein in full.

18    140.  Plaintiffs have a right to access and review Defendants' CCW policies,

19    to obtain applications to apply for a CCW, to submit applications, and to have

20    those applications reviewed in a fair, impartial, and constitutional manner and

21    obtain a CCW when they meet the constitutional and legal prerequisites or

22    standards.

23    141.  Plaintiffs desire a Decree from this Court directing Defendants to adopt

24    a constitutional application process for issuing CCW licenses.

**DECLARATORY RELIEF ON ALL COUNTS**

26    142.  Plaintiffs hereby re-allege and incorporate by reference the allegations

27    set forth in the foregoing paragraphs as if set forth herein in full.

28    / / /

09-CV-2371 IEG (BLM)

143.  There is an actual and present controversy between the parties in that Plaintiffs contend that Defendants' are illegally and unconstitutionally interpreting, administering, and applying the California CCW licensing statutes arbitrarily, capriciously, and holding applicants to unconstitutional and illegal standards. Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and Defendants' duties in this matter.

144.  There is an actual and present controversy between the parties hereto in that Plaintiffs contend that Defendants' policies as to "good cause" are an abuse of discretion and are unauthorized by law, and contrary to the Second Amendment. Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and Defendants' duties, and that Defendants' policies are contrary to law.

145.  There is an actual and present controversy between the parties hereto in that Plaintiffs contend Defendants' practice is to deny CCW licensure unless an applicant is a personal friend of the sheriff or of someone with influence over the sheriff, a contributor of money to the Sheriff or his campaigns or to others who have influence over the Sheriff; is wealthy or otherwise politically influential, or is a public official. Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and Defendants' duties, and that Defendants' policies are contrary to law.

146.  There is an actual and present controversy between the parties hereto in that Plaintiffs contend that Defendants' policies as to residency requirements are unauthorized by law and contrary to the Second Amendment, the Equal Protection Clause, the right to travel guaranteed by the Fourteenth Amendment, and the Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution. Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and Defendants' duties, to wit that Defendants' policies are contrary to law.

147.  There is an actual and present controversy between the parties hereto in that Plaintiffs contend that Defendants' "good cause" and residency policies are unauthorized by and violate California Penal Code section 12050. Defendants deny and dispute this contention. Plaintiffs desire a judicial declaration of their rights and Defendants' duties.

## PRAYER

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

148.  An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the "good cause" or other requirement of California Penal Code section 12050 as currently applied against applicants who seek a CCW for self-defense and who are otherwise qualified to obtain a CCW;

149.  Declaratory relief that Defendants' interpretation of the "good cause" provisions of California Penal Code § 12050 is unconstitutional either on its face and/or as applied to applicants who are otherwise legally qualified to possess firearms and who assert self-defense as their "good cause" for seeking a license to carry a concealed weapon;

150.  An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from requiring any duration of local residence prior to acknowledging satisfaction of the statutory residency requirement and  accepting an application under California Penal Code § 12050;

151.  Costs of Suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988 and California law;

/ / /

/ / /

1    152. Any further relief as the Court deems just and proper.

2  Respectfully Submitted,

3  **Date:** April 22, 2010                      **MICHEL & ASSOCIATES, P.C.**

4                                                 / s /C.D. Michel
5                                                 C.D. Michel
                                                  E-mail:cmichel@michellawyers.com
6                                                 Counsel for Plaintiffs

7
   **Date:** April 22, 2010                      **PAUL NEUHARTH, JR., APC**
8
9                                                 / s /Paul Neuharth
                                                  Paul Neuharth, Attorney at Law
10                                                Counsel for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09-CV-2371 IEG (BLM)