1  C.D. Michel – SBN 144257
   Clint B. Monfort – SBN 255609
2  Sean A. Brady – SBN 262007
   cmichel@michellawyers.com
3  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
4  Long Beach, CA 90802
   Telephone: (562) 216-4444
5  Facsimile:   (562) 216-4445
   Attorneys for Plaintiffs / Petitioners
6
   Paul Neuharth, Jr. – SBN 147073
7  pneuharth@sbcglobal.net
   PAUL NEUHARTH, JR., APC
8  1440 Union Street, Suite 102
   San Diego, CA 92101
9  Telephone:   (619) 231-0401
   Facsimile:   (619) 231-8759
10 Attorney for Plaintiff / Petitioner EDWARD PERUTA

11

12                  **UNITED STATES DISTRICT COURT**

13                  **SOUTHERN  DISTRICT OF CALIFORNIA**

14

15 EDWARD PERUTA,                    )   **CASE NO: 09-CV-2371 IEG (BGS)**
                                     )
16          Plaintiff,               )   **REPLY TO OPPOSITION TO**
                                     )   **MOTION FOR LEAVE TO AMEND**
17     v.                            )   **COMPLAINT**
                                     )
18 COUNTY OF SAN DIEGO,              )   Date: June 1, 2010
   WILLIAM D. GORE,                  )   Time: 10:30 a.m.
19 INDIVIDUALLY AND IN HIS           )   Courtroom: 1
   CAPACITY AS SHERIFF,              )   Honorable Irma E. Gonzalez
20                                   )
            Defendants.              )
21 _____ )

22

23

24

25

26

27

28

## I.    INTRODUCTION

Defendants' arguments against adding the California Rifle & Pistol Association Foundation ("CRPAF"), as well as the other proposed plaintiffs, are apparently based on a misunderstanding of the nature of the common legal claims being made and the common declaratory and injunctive remedies being sought by all plaintiffs through the Proposed First Amended Complaint (the "Amended Complaint")

Generally, and with the proviso that the nuances of, and theories behind, Plaintiffs' claims may evolve as this case progresses and as Defendants' defenses emerge, all of the Plaintiffs challenge how the Defendants interpret and apply California Penal Code section 12050, particularly as to its "good cause" and residency requirements. Specifically, Plaintiffs challenge Defendants' adopted government policy purporting to apply that misinterpretation to *all* applicants or would-be applicants for a CCW in San Diego.

All of the Plaintiffs seek declaratory relief invalidating Defendants' policy and the *general application* of its unlawful CCW issuance (or non-issuance) policy, which unconstitutionally applies Penal Code section 12050 *et seq,* as a matter of policy, *to everyone* who has applied or wants to apply for a license; not just the specifically named plaintiffs.  So neither the legal claims alleged, nor the relief sought, depend on proving facts specific to each plaintiff or each application. No Plaintiff seeks to compel the issuance of a CCW to them by this lawsuit alone. Rather, the issue in the Amended Complaint is whether Defendants' stated CCW issuance  policy regarding "good cause" and residency is lawful *in general*. Even the equal protection claim, although it will require some factual discovery to determine whether similarly situated individuals are unconstitutionally being treated differently, is primarily a question of law.

Plaintiffs see these issues as matters of broad public concern in need of resolution.  Toward that end, Plaintiffs wish to avoid litigating unnecessary procedural issues that might distract from resolving the substantive legal issues presented.  One

primary purpose for adding new plaintiffs is to try to avoid having standing issues (particularly ones that might rise to the level of a jurisdictional challenge) emerge later in this case after significant resources have been invested by the parties and this Court.

Largely ignoring the legal issues this case chiefly presents, Defendants' Opposition instead proffers two central arguments against Plaintiffs' Motion for Leave to Amend.  First, Defendants contend that proposed plaintiff CRPAF does not have standing because the claims asserted *and* the relief requested in the Amended Complaint require "'individualized proof specific to each [CCW] application." Further, Defendants contend that allowing CRPAF as a plaintiff might well require the participation of every individual CRPAF member in the lawsuit. (Opp. at pp. 2-3, lns. 24-26; 1-2).

Second, with respect to the other proposed plaintiffs, Defendants contend that adding these additional parties would unnecessarily complicate or delay this case because individualized discovery would be required for each of these plaintiffs. (Opp. at p. 3, lns. 26-28).

Considering the commonality of the legal claims and remedies being sought, Plaintiffs' Motion should be granted. It includes the same legal claims that arise from the Defendants' same conduct (i.e., the same nucleus of operative facts), seeks the same declaratory and injunctive remedies for all Plaintiffs, and is brought against the same Defendants as the initial Complaint.

## II.   ARGUMENT

### A.   CRPAF Has Associational Standing

CRPAF is an association of individuals primarily dedicated to promoting the exercise and preservation of Second Amendment rights, including self-defense. CRPAF seeks the same declaratory and injunctive remedy on behalf of all its members, and all of those members will benefit from enjoining Defendants' restrictive and arbitrary CCW issuance policy, which they allege unconstitutionally infringes on the fundamental right to keep and bear arms.  CRPAF's goal is protection of Second

Amendment rights. That goal is common to CRPAF's entire membership.

Whether an association satisfies the third prong of the standing test set out in *Hunt v. Wash. State Apple Adver. Comm'n* (1977) 432 U.S. 333 at 343, and cited by Defendants, depends on the claims it asserts *and* the relief it requests. *Warth v. Seldin*, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975). Defendants make two arguments to support their position that CRPAF does not satisfy the third *Hunt* prong. First, Defendants argue that the relief sought by CRPAF "require[s] 'individualized proof' specific to each permit application." (Opp. at p. 3, lns. 1-3). Second, that even if the *relief* sought by Plaintiffs does not bar associational standing, that the nature of Plaintiffs' legal *claims* are so "individualized" that they would "require an 'ad hoc factual inquiry' for each member represented by the association." (Opp. at p. 3, lns. 13-16).

Defendants' arguments misunderstand the claims and relief sought by CRPAF, and indeed of the rest of the Plaintiffs too.  To reiterate, all Plaintiffs (including CRPAF) claim that Defendants' refusal to accept self-defense as sufficient "good cause" for a CCW license infringes on the right to bear arms and cannot be constitutionally justified by the government, and thereby violates the Second Amendment.  Because Defendants refuse to accept self-defense, absent an additional showing of a specific articulated threat to the applicant, as sufficient "good cause" to issue a CCW license, all of the Plaintiffs allege that the heightened "good cause" standard and accompanying policy adopted by Defendants is set unconstitutionally too high.  Plaintiffs also allege that the durational residency requirement, adopted as a standard to establish the residency required by the state statute, violates the Second Amendment, Equal Protection, the Right to Travel, and Privileges and Immunities. Finally, to the extent that Defendants vary from their heightened "good cause" or residency policies and issue CCW licenses to favored persons with no more "good cause" or residency than similarly situated persons who are denied a permit, all Plaintiffs allege an Equal Protection violation.   All Plaintiffs seek a judicial

declaration confirming their claims, and injunctive relief to this effect.

Defendants' CCW license issuance policy has affected, and unless enjoined will continue to, affect *all applicants and potential applicants for a CCW license*, not just the named plaintiffs. This includes members of CRPAF, some of whom have applied, and some of whom would apply for a CCW but for Defendants' restrictive policies on good cause and/or residency, which discourages those who want a CCW from bothering to apply and chills their exercise of a constitutional right.

### 1.    CRPAF Seeks Common *Relief* for All of its Members

CRPAF, on behalf of its members, contends that the heightened standards Defendants' impose as their policy on what must be established to meet the "good cause" and residency requirements for issuing CCWs constitute an unconstitutional interpretation of section 12050's requirements. Although specific Plaintiffs are named in the Amended Complaint along with CRPAF, neither their claims nor the relief they seek are individually unique or different from the relief sought by CRPAF. Since the Defendants' current policy has been in effect for years, the named Plaintiffs merely represent the multitude of other people who were unconstitutionally denied a CCW by Defendants' restrictive issuance policy, or who were deterred thereby from even applying for a CCW in the first place.  Plaintiffs and CRPAF seek relief from Defendants' unconstitutional policy for the public at large, not any particular individual. (Pls.' First Am.  Compl., ¶¶ 148-150.)

CRPAF's situation is akin to the plaintiff in *International Union, United Auto, etc. v. Brock* (U.S. 1986) 477 U.S. 274. In *Brock*, a labor union challenged, on behalf of its members, the Secretary of Labor's interpretation of the eligibility provisions of the Trade Act of 1974, which provisions provided benefits to certain laid off workers. The Court of Appeals wrongly denied the union standing, and held that because those UAW members "who had suffered an alleged injury had done so in varying amounts requiring individualized proof," the relief sought could not be obtained unless "each individual claimant was a party plaintiff. *Brock*, 477 at 280 (internal citation omitted).

The U.S. Supreme Court reversed, explaining that "the Court of Appeals misconstrued the nature of petitioners' claims. Neither these claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions." *Id.* at 287. "Thus, though the unique facts of each UAW member's claim will have to be considered by the proper state authorities before any member will be able to receive the benefits allegedly due him, the UAW can litigate this case without the participation of those individual claimants and still ensure that "the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 288 (citing *Warth,* 422 U.S. at 515).

Just as the Court of Appeals in *Brock*, Defendants here misconstrue the nature of Plaintiffs claims and the remedies sought. "[A]ssociational standing is often granted where the challenge raises a pure question of law that is not specific to individual members." *See Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*, 906 F.2d 25, 35 (1st Cir. 1990) (citing *Brock*, 477 U.S. at 286). It is unnecessary, and would be a waste of the Court's resources, to consider the individual circumstances of each and every aggrieved CRPAF member, because the Complaint chiefly raises questions of law: whether the Sheriff and Defendants properly interpreted the Penal Code's "good cause" and residency provisions.

And, to paraphrase the Supreme Court in *Brock,* "though unique facts of each [member-applicant (i.e., competency with a firearm, criminal history, etc.)] will have to be considered by [Defendants] before any member will be able to receive [a CCW], the [CRPAF] can litigate this case without the participation of those individual [member-applicants] and still ensure that 'the remedy, if granted, will inure to the benefit of those members of the association actually injured.'" *Id.* at 288 (citing *Warth*, 422 U.S. at 515).

Defendants cite *Ass'n of Christian Schs. Int'l v. Stearns*, 2010 U.S. App. LEXIS 745 (9th Cir. Cal. Jan. 12, 2010) to support their argument. In *Stearns*, an organization representing Christian students sued the University of California, seeking declaratory relief that the school's policy of refusing to approve religious-based courses that did not "treat the study of religion or ethics from the standpoint of scholarly inquiry" was unconstitutional, and also seeking an injunction on that policy. *Id*. at *6. The District Court denied the group standing. On appeal, the Ninth Circuit upheld the decision of the district court to deny the group standing because "The Plaintiffs' *as-applied claims* and the relief they seek, although equitable in nature, both require 'individualized proof' *specific to each rejected course and the school that offered it*." *Id*. at *7 (emphasis added).   The *Stearns* court reasoned that "individual course decisions 'are not common to the entire membership.' Relief would not be 'shared by all in equal degree.'  Instead, each course decision affects only one [organizational] school, and relief would benefit only that school." *See Ass'n of Christian Schs. Int'l v. Stearns* (2008) 678 F.Supp.2d 980, 985.

Unlike the plaintiffs in *Stearns*, Plaintiffs do not seek to vindicate the constitutional worthiness of any particular individual to have a CCW, nor even to compel the issuance of a CCW to any individual plaintiff.  No individualized decisions need be made.  Rather, Plaintiffs seek relief for *all* current, future, and contemplated CCW applicants, including all members of the CRPAF, who have applied for a CCW or might want to, and who have been or would be denied a CCW as a result of the policy held out by defendants as the one Defendants apply to *all* applicants to establish "good cause" and residency.

2. **Plaintiffs' *Claims* Do Not All Require an "Ad Hoc Factual Inquiry"**

Preliminarily, we note that even if Plaintiffs' claims were found to require some amount of "individualized proof" or the participation of *some* CRPAF members in the suit, that would not necessarily foreclose CRPAF's standing. (See *National Ass'n of*

*College Bookstores v. Cambridge Univ. Press* (S.D.N.Y. 1997) 990 F. Supp. 245, 250 (The fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing); citing *New York State Nat'l Org. of Women v. Terry* (2d Cir. 1989) 886 F.2d 1339, 1349 (associational standing present though evidence from some individual members required); see also *UAW v. Brock*, 477 U.S. at 282 (*Hunt* test was formalized version of doctrine announced in *Warth v. Seldin*, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975), which held that associational standing was not present in cases requiring "the individual participation of *each* injured party . . . .") (emphasis added)).  As mentioned, Plaintiffs' legal challenges do not require participation of any CRPAF members, let alone all of them. (See *Hospital Council of Western Pennsylvania v. Pittsburgh*, 949 F.2d 83,89-90 (3d Cir. Pa. 1991) (So long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction); (and *see Welch v. Eli Lilly & Co.*, 2008 U.S. Dist. LEXIS 61648, *14-20 (S.D. Ind. Aug. 7, 2008) (holding the NAACP had standing to challenge an alleged pattern or practice of race discrimination *against individuals*.)

Defendants nonetheless incorrectly rely on *Stearns* and *Rent Stabilization Ass'n v. Dinkins* (2d. Cir. N.Y. 1993) 5 F.3d 591, 595-597, to assert that regardless of the nature of the *relief* plaintiffs seek, CRPAF does not have associational standing because the *claims* asserted "require an 'ad hoc factual inquiry' for each member thereof. (Opp. at p. 3, lns. 13-16). But both *Stearns* and *Dinkins* dealt solely with standing relating to *as applied* claims that required fact-intensive analysis of each individual claimant.  (See 2010 U.S. App. LEXIS 745 at *7; see also *Dinkins*, 5 F.3d at 595-596). *Dinkins* involved an organization purporting to represent various landowners who claimed to be the victims of takings. *Dinkins*, 5 F.3d at 596. In denying the organization standing, the court in *Dinkins* reasoned that "whether a

1  taking has occurred depends not only on a legal interpretation of takings
2  jurisprudence, but also on a variety of financial and other information unique to each
3  landlord," and that the court "would have to engage in an ad hoc factual inquiry for
4  each landlord who alleges that he has suffered a taking." *Id*.

5      Such is not the case here. Plaintiffs assert seven claims for relief in their
6  Complaint, only one of which, the Second Claim for Relief (Equal Protection), would
7  require any 'factual inquiry' – as to individuals granted or not granted a CCW and
8  their comparative circumstances, and not even necessarily the individual Plaintiffs'
9  circumstances. All Plaintiffs' other claims are direct *legal* challenges to Defendants'
10  CCW issuance policies, requiring no individual fact-specific inquiry.

11      Unlike Plaintiffs' claims here, the issue in *Stearns* depended on the need for
12  evaluating the specific merits of a class course, just as the issue in *Dinkins* depended
13  on evaluating the unique property aspects of land.  Defendants' reliance on *Stearns*
14  and *Dinkins* is misplaced.  Because the challenges here are to the policy itself, the
15  claims present primarily questions of law. They do not depend on, nor need, an inquiry
16  into the facts of each CRPAF member to establish Defendants' constitutional
17  violations.

18      **3.    CRPAF Also Has Standing Because CRPAF Itself  Is Injured
           by Defendants' Policy**

19

20      When an organization is forced to devote its time and energy to dealing with
21  certain conduct, it is injured by that conduct. *See, e.g. Havens Realty Corp.* v.
22  *Coleman*, 455 U.S. 363 (1982). CRPAF is an organization dedicated to promoting the
23  exercise and preservation of Second Amendment rights.  This includes raising
24  awareness about unconstitutional laws, defending and expanding the legal recognition
25  of rights protected by the Second Amendment, promoting firearms and hunting safety,
26  protecting hunting rights, enhancing marksmanship skills of those participating in
27  shooting sports, and educating the general public about firearms and the laws relating
28  to firearms.  Because its members rely on CRPAF to not only inform them of the scope

of their Second Amendment rights, but to guard against infringements thereto, unlawful policies such as, and including Defendants', divert CRPAF's limited resources, including time and treasure.

### B.   The Four Proposed Individual Plaintiffs Should be Allowed Added

#### 1.   Leave to Amend Is Given Liberally

"The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a). The policy favoring leave to amend is "a necessary companion to notice pleading and discovery" (*Lone Star Invest. Club v. Schlotzsky's, Inc.* (5th Cir. 2001) 238 F.3d 363, 367), and should be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1051; see also *Moore v. Baker* (11th Cir. 1993) 989 F.2d 1129, 1131, holding that "justifying reason must be apparent for denial of a motion to amend."

#### 2.   Additional Plaintiffs Will *Not* Unduly Prejudice Defendants Nor Unduly Burden This Court

As previously explained, adding the proposed plaintiffs will neither confuse any legal issues, nor significantly or unnecessarily expand this litigation. (See *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. Cal. 1997)). Plaintiffs' Prayer for relief in the Complaint is virtually identical to that of the Prayer in the original Complaint. (*Compare* Compl. at pg. 3, ¶¶ 1-3, *and* Pls.' First Am. Compl., ¶¶ 148-150). Thus, although the Motion seeks to add new claims and plaintiffs, they are all still based on the same policy and seek the same relief as the original complaint in this matter; they do not significantly expand the litigation. The proposed plaintiffs' claims are nearly the same as, and based upon the same set of factual circumstances as the original sole Plaintiff.  And allowing the additional parties now avoids the costliness of separate suits later.

Moreover, the Opposition fails to explain how or which of the proposed plaintiffs or allegations will cause confusion. To justify denial of leave to amend, the prejudice must be substantial.  *Morongo Band of Mission Indians v. Rose* (9th Cir.

1990) 893 F.2d 1074, 1079.  Defendants' inability to articulate a specific example of how the issues will expand and become confusing, indicates how *insubstantial* any potential prejudice to Defendants really is.

As explained above, Plaintiffs' claims for relief are chiefly questions of law. Defendants mention the "36 new paragraphs of factual allegations regarding the four new individual plaintiffs" (Opp. at pg. 3, lns. 24-25), but this merely expresses defendants' concerns about new *paragraphs*, not new facts. The amended complaint does not significantly affect the scope of this litigation. Defendants have failed to demonstrate any undue prejudice by the addition of the proposed plaintiffs to this lawsuit.

### 3.    There Was No Undue Delay by Plaintiffs

The Motion was filed by the date this Court allowed for the filing of amended pleadings. Defendants do not provide a reason they would be prejudiced by the timing of the Motion. Thus, there is no undue delay. Further, a showing of delay alone usually will not justify denial of leave to amend anyway. *DCD Programs, Ltd.*, 833 F.2d 185, 186. Any of Defendants' concerns that Plaintiffs' Complaint would complicate this Court's previous discovery orders is easily remedied, as this Court has discretion to modify the scheduling Order accordingly.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend Complaint should be granted.

Date: May 24, 2010                           **MICHEL & ASSOCIATES, P.C.**


                                             /s/ C.D. Michel
                                             C.D. Michel
                                             E-mail:cmichel@michellawyers.com
                                             Counsel for Plaintiff Edward Peruta

1
2

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7
8
9

| | |
|---|---|
| EDWARD PERUTA, | ) **CASE NO. 09-CV-2371 IEG (BGS**) |
| Plaintiff, | ) **CERTIFICATE OF SERVICE** |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF SAN DIEGO, | ) |
| WILLIAM D. GORE, | ) |
| INDIVIDUALLY AND IN HIS | ) |
| CAPACITY AS SHERIFF, | ) |
| | ) |
| Defendants. | ) |

10
11

IT IS HEREBY CERTIFIED THAT:

12
13

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age.  My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

14

    I am not a party to the above-entitled action. I have caused service of:

15

**REPLY TO OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT**

16
17

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

18
19
20
21
22
23

James M. Chapin                           Paul Neuharth, Jr.
John J. Sasone                            PAUL NEUHARTH, JR., APC
County of San Diego                       1440 Union Street, Suite 102
Office of County Counsel                  San Diego, CA 92101
1600 Pacific Highway                      Telephone:  (619) 231-0401
Room 355                                  Facsimile:   (619) 231-8759
San Diego, CA 92101-2469                  pneuharth@sbcglobal.net
(619) 531-5244
Fax: (619-531-6005
james.chapin@sdcounty.ca.gov

24

    I declare under penalty of perjury that the foregoing is true and correct. Executed on May 24, 2010.

25
26

                                          /s/ C.D. Michel
                                          C. D. Michel
                                          Attorney for Plaintiffs

27
28

@PFDesktop\::ODMA/MHODMA/IMANAGE1;Interwoven;161720;3