JOHN J. SANSONE, County Counsel
By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
1600 Pacific Highway, Room 355
San Diego, CA 92101
Telephone: (619) 531-5244
james.chapin@sdcounty.ca.gov

Attorneys for Defendant William D. Gore

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PERUTA, MICHELLE LAXSON, JAMES DODD, DR. LESLIE BUNCHER, MARK CLEARY and CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF,<br><br>    Defendants. | USSD No. **09-CV-2371 IEG (BLM)**<br><br>**DECLARATION OF BLANCA PELOWITZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: November 1, 2010<br>Time: 10:30 a.m.<br>Courtroom: 1<br>Honorable Irma E. Gonzalez |

I, BLANCA PELOWITZ, declare as follows:

1.    I am the Manager of the San Diego County Sheriff's Department License Division which is responsible for administering the concealed weapons permit program for the County of San Diego ("County"). I am a 31 year employee of the Sheriff's Department ("Department") assigned to the Sheriff's License & Criminal Registration Division ("Division"). I originally started my career with the Sheriff's Department in December of 1978. I was promoted to Staff Supervisor in 1987 and then to Manager of the License Division, under the Law Enforcement Service Bureau, in November of 2002.

///

2. The License Division is responsible for all the regulatory licensing, criminal registrations and State mandated licenses which include the processing of all carry concealed weapon (CCW) licenses in the County. In my capacity, I have been designated to act as the Sheriff's sole authorized representative for reviewing CCW applications and making the final determination for the issuance of CCW licenses through the Law Enforcement Service Bureau.

3. In 1987, the Copley Press filed a suit in Superior Court against Sheriff John F. Duffy relating to a public records request stemming from the Los Angeles – CBS, Inc. vs. Block case which involved allegations of abuses by Los Angeles officials in exercising the statutorily delegated discretion to issue licenses for carrying concealed weapons. In the Copley lawsuit, hundreds of files were copied for the Court, and although the Court requested certain information be released as public records, it did not find that the Sheriff in San Diego County was abusing his discretion in issuing licenses. Instead, the Court determined that there are four appropriate categories in which the Sheriff's Department processes and issues CCW licenses. Those categories per Judge Huffman are:

Category 1 = Protected Law Enforcement Personnel which includes: active and retired reserves, federal agents, Police Department Evidence Technicians, Deputy District Attorneys, etc.

Category 2 = Personal Protection Only includes: documented threats, restraining orders and other related situations where an applicant can demonstrate they are a specific target at risk.

Category 3 = Security/Investigative Personnel includes: plain clothes security, private investigators and private patrol operators, bail bondsman, etc.

Category 4 = Business owners/employees includes a diversity of businesses & occupations, such as doctors, attorneys, CEO's, managers, employees and volunteers, whose occupation or business places them at high risk of harm.

///

4. The Department's history during the years involving CCW licenses is extensive. Throughout the different administrations there have been different philosophies and practices. However, the policy and criteria for issuing concealed weapon licenses has remained consistent throughout the years. In 1999, the State of California standardized the application process and required additional mandates. As a result, the Department updated its policies and procedures. For the issuing agency, these changes created additional scrutiny and more responsibility in processing CCW applications.

5. The current Sheriff's Department's Policy Statement since 1999 is available on the Sheriff's internet website. The site provides adequate information to potential applicants on what the process consists of and states the following: "*The Sheriff may issue a concealed weapon license to law-abiding residents of San Diego County who comply with the provisions of Penal Code Section 12050. In accordance to PC 12050 and subject to department procedure, any resident of San Diego County may submit an application to the Sheriff's License Division.*" Furthermore, the information continues to outline the application process, initial and renewal application fee and documentation required.

6. California is not a "Shall Issue" or "Right to Carry" State. California Penal Code §12050-12054 sets forth the general criteria that applicants for concealed weapon licenses must meet. This requires applicants to be of good moral character, a resident of the County they apply in, demonstrate good cause and take a firearms course. Of these four requirements, only the one pertaining to "good cause" affords Sheriff's broad discretion. In San Diego County, the definition of good cause has been unanimously adopted by the members of the Police Chiefs and Sheriff Association and every police chief in this county has authorized the Sheriff's Department to manage the issuance of CCW licenses accordingly. The long-standing policy of this Department is generally to approve applications unless the applicant does not have a primary residence in San Diego County, if he/she has had numerous negative law enforcement contacts or

is on probation of any sort, or if he/she cannot demonstrate good cause. There are currently 1,223 active CCW licenses issued in San Diego County.

7. Good Cause in this context is defined by this County to be a set of circumstances that distinguish the applicant from the mainstream and causes him or her to be placed in harm's way. Simply fearing for one's personal safety alone is not considered good cause. This criterion can be applied to situations related to personal protection as well as those related to individual businesses or occupations.

Good cause is also evaluated on an individual basis. Reasons applicants request a license will fall into one of the four general categories originally set by Judge Huffman in 1987. Since the 1999 State mandates, the scrutiny in accepting applications and supporting documentation became more prevalent in the initial processing. For instance, all new applicants must provide supporting documentation. If applying for business purposes, proof it is a legitimate and fully credentialed business is required as well as having to demonstrate and elaborate good cause for carrying a firearm. The same requirement of documentation applies to those applying strictly for personal protection (i.e., self-defense). In addition, the required documentation, such as restraining orders, letters from law enforcement agencies or the DA familiar with the case, is discussed with each applicant.

8. Resident in this context is generally defined by this County to be any person who maintains a permanent residence or spends more than six months of the taxable year within the County if the applicant claims dual residency. San Diego County uses the term "resident" as outlined in Penal Code section 12050(D), and not "domicile." Documentation for residency includes, but is not limited to, two proofs of documentation such as unpaid utility bills that lists applicant's name, lease agreements, property tax bills, etc. Residency site verification is also conducted by staff on all initial applicants. Part-time residents who spend less than six months in the County are considered on a case-by-case basis, and CCW licenses have been issued in such circumstances.

9. Good Moral Character in this context is defined to be the applicant's overall background, e.g. arrests, convictions, negative law enforcement contacts, field interviews, citations, crime cases, DOJ/FBI fingerprint & firearms eligibility clearance as well as input from other law enforcement agencies throughout the County. This requirement also includes a written application for investigation into the truth-of-the-matter. Letters of references from personal friends or associates who can attest to the applicant's good moral character are requested in support of the applicant. In some instances, those who are within the criminal justice systems, e.g. judges, Deputy District Attorneys, Criminalists, and are seeking licenses at the request of the employer, are waived from the reference letter request.

10. Firearms Safety Course. In 1999, the State of California enacted a mandatory firearms safety course for new license applicants. The course of training for new applicants may be any course acceptable to the licensing authority, shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding permissible use of a firearm. For renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding permissible use of a firearm. The Sheriff's Weapons Training Unit assisted the License Division in outlining the current curriculum, as adopted by the Department, for the CCW firearms instructors to use.. The CCW firearms instructors list is updated every two years requesting 16-hrs of additional training from each instructor. The Sheriff's Department through the Honorary Deputy Sheriff's Association, an association made up of business and community leaders committed to supporting law enforcement through the County, and the Weapon Trainings Unit, have put together a firearms course and qualifications for members of this association and also made it available to Department employees and their families.

In addition to the state mandated required firearms course, all applicants, new, renewal and any weapon changes, must attend a qualify-shoot and firearms safety

inspection at our weapons training unit prior to having weapons approved on the license.

   11.   Initial Application Process/Investigative Background/Review. In 1998, AB2022 was introduced, standardizing the CCW application process statewide, and became effective in 1999. As a result, the Sheriff's department conducted a revamp and adopted the process that is currently in place, as outlined above. In San Diego County, prior to 2006, all applicants would submit applications and pay a fee but often would not qualify because he/she did not understand the criteria. In 2006, as a courtesy for applicants, the Department initiated an interview process to assist both applicants and line staff in determining pre-eligibility (included as part of job classification of line staff that conduct interviews). During this phase applicants will discuss reasons and situations with line staff who will question applicants to draw more information. Tools are provided to staff in conducting interviews, such as tips, memos, reminders, and staff is trained to make notes of all comments made by the applicant during the interview.

Based on what the applicant outlines during the interview, the information will assist staff in determining what documentation may be required of the applicant. If the clerk is able to determine that good cause is questionable, clerks are able to give an educated guess based on the scenarios described by applicants. The next phase involves applicants gathering their documentation, attending the 8-hour firearms course and returning to submit the written application, fees, and documentation. During this process applicants will be fingerprinted, photographed, signatures will be obtained and applicants are instructed to go to Sheriff's Range for a weapons safety checked and to complete a final qualify-shoot. Once this phase is complete, the file and all documents are forwarded to the Background Unit for the comprehensive background and verification process. During this phase, investigators prepare notifications to other law enforcement agencies throughout the County or State for input, clear weapons through AFS (automated firearms systems), conduct a local criminal history check, DMV check,

///

1  Lexis Nexis, wait for fingerprint results and DOJ firearms eligibility, conduct residence
2  verifications, verify character reference letters and verify documents.
3       Once everything has been received and verified, the investigator will provide a
4  recommendation to issue or recommend disapproval and forward to me (the Manager)
5  for final review.  During the final review, I will review the entire application packet,
6  supporting documents, reasons, and results of the background investigation.  I will then
7  make the decision to issue or deny and will include any reasonable restrictions and/or
8  instructions to staff.  Membership in the Honorary Deputy Sheriff's Association has no
9  bearing on the license process and is not considered.  (Many HDSA members insist on
10 having the membership card copied for their application file.)  The CCW license file is
11 then referred back out to staff who will complete the process by calling in the applicant
12 to collect the remainder of the local processing fee, obtain necessary signatures and
13 thumb prints, and to deliver the license to applicant.  There are three different types of
14 licenses:  the most common is the 2-year standard; 3-year judicial for judges and 4-year
15 law enforcement reserve.
16       12.   CCW Renewal Process.  CCW license holders can renew licenses up to 30
17 days prior to the expiration date.  All renewals must comply with the 4-hour firearms
18 course requirement from the list of approved instructors.  All renewals also need to go
19 to the Sheriff's range for a qualify-shoot and firearm safety inspection.  Renewals are
20 issued on the spot if absent any negative law enforcement contacts, crime cases, arrests
21 and there no changes from the initial application as to the reasons.  No review by
22 supervisor or managers is needed for the renewal process unless there have been
23 changes to the reason.  Applicants still need to provide some form of documentation to
24 support his or her continued need but not to the extent of the initial application.
25 Applicants sign under penalty of perjury that all prior conditions exist.  A local criminal
26 history check is conducted, fees are collected, and new photograph/thumbprint is
27 obtained.  Once the process is complete, the applicant is given his or her new license
28 valid for another term.

In the past, some renewals were issued without supporting documentation based on the affirmation that conditions still existed. Sheriff Gore, who was first formally elected in November 2009, has directed the Division to require supporting documentation for all renewals.

All applicants are informed that should any changes occur during the term of the license, he or she must notify the Division within 10 days of the change otherwise he or she may be in violation of the terms and conditions under which the license was issued. Administrative action may be considered.

13. Review Process. The review process consists of an administrative review either during the initial determination process, or, during the renewal if information is received that the individual was arrested during the term, had negative contact with law enforcement or the reason for which it was originally issued has changed. During this process, the file is referred to a supervisor who will outline what the background unit will investigate. Background will conduct the investigation, order arrest/crime case reports, follow-up with court cases, conduct interviews if necessary and provide recommendations and forward to the manager.

14. Administrative Process. The new 19 page State Standard CCW Application, available on the Sheriff's and DOJ's websites, provides informational inserts about the application and the process. There are no provisions in the Penal Code for an appeal process involving administrative action from the issuing agency. The Sheriff's Department in 1998-99 implemented the administrative/reconsideration process for CCW applicants. When taking administrative action to deny, suspend or revoke a CCW license, an upper command concurrence through the Law Enforcement Service Bureau is required before taking action. All actions require the Manager to prepare a brief synopsis of the proposed action and recommendation. Command will either concur or request additional information. If concurrence is provided, the denial, suspension or revocation letter is mailed out. Notifications are forwarded to the State and the file is inactivated and information is entered in ONS (Officer's Notification

System). The individual is given the opportunity to request an appeal of the decision by writing to the Assistant Sheriff of the Law Enforcement Service Bureau. The appeal is heard by the Assistant Sheriff of the Bureau who will make the determination to overturn or uphold decision.

15. Many Californians and San Diegans for years have opposed the State's stance regarding concealed weapon laws. The State of California is still one of the strictest gun law states in the nation and the Sheriff is bound by what the laws dictate. Although several bills have been introduced trying to change the State criteria, there has been no success in moving California to a "shall-issue state." Until the State of California is willing to consider this, the Sheriff of San Diego County will continue to accept and process applications as it has since the new legislative changes in 1999.

16. Prior administrations have had the same if not similar challenges with the application process and criteria but applied different practices. During Sheriff Kolender's Administration and now Sheriff Gore, there has been more consistency in accepting, processing and determining the eligibility of applicants. It was in Kolender's Administration that the Assistant Sheriff of the Law Enforcement Support Bureau was designated to oversee the CCW process and all licenses are issued solely through the License Division as outlined in this declaration.

17. Edward Peruta's CCW license application was denied solely because he provided no documentation supporting his statement of "good cause." Residency was not a factor in the denial. In addition, his alleged "business" is not licensed to do business in the State of California. Peruta made no effort to provide supporting documentation; the only document he provided was a photograph of a sign from a mobile home park. (Defendant's Exhibit 1.)

18. Michelle Laxson did not apply for a CCW license. She was interviewed by staff but declined to complete and application and did not return to submit.

19. James Dodd has submitted an application which is still pending at this time.

///

20.     Mark Cleary's renewal application was denied based on lack of supporting documentation relating to his employment in March of 2010. Cleary requested a reconsideration appeal and the decision to deny the license was overturned by Command after information about his employment was confirmed. See Letter at Plaintiffs' Exhibit "S." He was issued a CCW license for a new term in June of 2010

21.     Leslie Buncher was a physician who held a valid CCW license during the period of 1971 to 2003. During this time frame, Dr. Buncher never requested or mentioned reasons related to anti-abortion protestors or any specific threats. In 2008 Dr. Buncher reapplied for a license. He was no longer a practicing physician and the reasons he listed related to his former medical practice. Dr. Buncher declined to go through the reconsideration appeal process.

22.     I have reviewed the allegations of the First Amended Complaint and the documents submitted by Plaintiffs in support of their motion. I have been in this position since 2002 and there has never been any special treatment for any group including the Honorary Deputy Sheriff's Association or for any persons who have donated to Sheriff's election campaigns. Plaintiffs have provided documents where line staff have made notes which Plaintiffs suggest is evidence that HDSA members have received special treatment. Line staff are trained to document whatever is communicated at an interview. Some of the notes in the files are referencing that the applicant has taken the HDSA firearms training course which they offer. In addition, I have provided true and accurate copies of documents from our files in response to Plaintiffs' statement that certain HDSA members did not provide documentation in support of renewal applications, when in fact, they did. Those documents are lodged as Defendant's Exhibits 2 through 18.

1  I declare under penalty of perjury that the foregoing is true and correct. Executed
2  this 1st day of October 2010 at San Diego, California.

_____
BLANCA PELOWITZ