C. D. Michel – SBN 144257
Clint B. Monfort – SBN 255609
Sean A. Brady – SBN 262007
cmichel@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile:   (562) 216-4445
Attorneys for Plaintiffs / Petitioners

Paul Neuharth, Jr. – SBN 147073
pneuharth@sbcglobal.net
PAUL NEUHARTH, JR., APC
1140 Union Street, Suite 102
San Diego, CA 92101
Telephone:  (619) 231-0401
Facsimile:   (619) 231-8759
Attorney for Plaintiffs / Petitioners

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EDWARD PERUTA, MICHELLE LAXSON, JAMES DODD, DR. LESLIE BUNCHER, MARK CLEARY, and CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION

  Plaintiffs,

v.

COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF,

  Defendants.

CASE NO: 09-CV-2371 IEG (BGS)

DECLARATION OF CARLISLE E. MOODY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## DECLARATION OF CARLISLE E. MOODY

I, Carlisle E. Moody, declare as follows:

1. I am a Professor of Economics and Public Policy at the College of William & Mary in Virginia where I have taught since 1970. (Before then I taught at the University of Leeds in England.) I have worked extensively in the field of American crime and the statistics thereof. My publications include: "Testing for the Effects of Concealed Weapons Laws: Specification Errors and Robustness," 44 J. LAW & ECON. 799 (2001), Carlisle E. Moody & Thomas B. Marvell; "Guns and Crime," 7 Southern Economic J. 720-736 (2005); "Firearms and Homicide" in B. Benson and P. Zimmerman (eds.), *Handbook on the Economics of Crime*, Edward Elgar, Northampton, MA (forthcoming); "The Debate on Shall-Issue Laws," (with T. B. Marvell), *Econ Journal Watch*, 5 (3) September 2008, 269, 293; and "The Debate on Shall-Issue Laws," Econ J. Watch 269-293 (2008).

2. I have read the declaration of Franklin Zimring presented by the defendants in this case. By way of background, though Prof. Zimring is a law professor and not a criminologist, he has since the late 1960's been a leading advocate for much more stringent gun control. At the same time, as documented hereafter, it must be noted that his predictions as to guns and crime have not been borne out by actual evidence over this period.

### HANDGUN CARRY PERMITS AND CRIME - THE LOTT-MUSTARD CONTROVERSY

3. In approaching this subject, it is necessary to begin with an elementary distinction between the apparent fact that widespread gun permit issuance does no harm and the highly controversial issue of whether it actually does positive good by deterring violent crime.

4. In 1997, two University of Chicago criminologists, John Lott and David Mustard, published a Journal of Legal Studies article based on a comprehensive study of gun and crime data for every American county from

1977-1992. The theory is that a criminal would be deterred from committing a violent crime if he reasonably believed that the potential victim was carrying a concealed weapon. Thus, the minority of individuals who do carry concealed weapons help protect the majority who do not because the criminal cannot distinguish the unarmed victim from those who are armed. Therefore, increasing the number of citizens who carry concealed weapons should reduce violent crime.

5. The Lott-Mustard study showed that, in fact, shall-issue laws seem to deter violent crime. They found that: 1) areas with widespread gun ownership among law abiding, responsible people consistently had significantly lower rates of murder and other violent crime than areas which severely restricted gun ownership (or for other reasons had much less ownership); and, 2) Murder and other violent crimes declined in areas which adopted policies of widely licensing law abiding, responsible adults to carry handguns. Subsequently Prof. Lott has expounded on this concept in published volumes; see generally, Lott, MORE GUNS, LESS CRIME (U. of Chicago Press, 3d edition 2010).

6. Their more-guns-less-crime thesis has been highly controversial, having been assailed by Prof. Zimring and other gun control advocates. Nevertheless, thirty-seven states have enacted laws entitling responsible adults to have gun carry permits. In addition, Mississippi is shall-issue in practice, carrying guns is unregulated in Vermont and Arizona, and Iowa's shall-issue law will take effect January 1, 2011.

7. Gun ban advocates, including Professor Zimring, incessantly predicted that those states would have vastly higher murder rates as a result of these laws. It is unnecessary to examine these predictions beyond noting that they have been proven false by subsequent crime statistics. To date, those statistics have shown that, as Lott-Mustard predicted, homicide has further fallen, not risen, in the states that adopted such laws. The liberalization of gun carrying laws may or may not be the cause for the decline in crime shown by these statistics, but what is certain is it

1 *did not cause* widespread or even minor increases in crime.

2     8.    It is noteworthy that critical - but non-politically motivated -- scholars who replicated Lott & Mustard's work reached the same conclusion (more guns, less crime) from different perspectives, albeit with some criticism of the Lott-Mustard methodology. (See the seven articles printed in the Oct. 2001 issue of the Journal of Law and Economics (v. 44) including mine cited in paragraph #1 above.

    9.    As to Prof. Zimring's prediction that widespread concealed carry licensing would cause greatly increased shooting crimes, actual experience has been entirely contrary. This is exemplified by the following articles, several from newspapers which opposed the new laws in vehement editorials: "Gun Law Spurs No Violence: No Problems Arising from Concealed Weapons Permits," TRAVERSE CITY RECORD EAGLE, April 7, 2002; "Records Say Licensed Gun Owners Are Least of Florida's Crime Problem," TALLAHASSEE DEMOCRAT, Nov. 4, 1990; "Gun Permits Surge, But Not Violence," DETROIT NEWS, March 21, 2002; "Concealed Weapons Advocates Were Right: Crime Didn't Go Up, "CHAPEL HILL HERALD, May 6, 1997, p. 4; "Concealed Weapons Owners No Trouble," GAINESVILLE SUN, Nov. 4, 1990; "Pistol Packing and Proud of It," ROANOKE TIMES, May 19, 2002; "Handgun Law's First Year Belies Fears of 'Blood in the Streets," TEXAS LAWYER, Dec. § 9, 1996, p. 2.; "Gun-Toting Kentuckians Hold Their Fire," CINCINNATI ENQUIRER, June 16, 1997, A1.

**NO CONTROVERSY AS TO CCW ISSUANCE**

    10.    The vehement controversy over the more-gun-less-crime thesis has tended to obscure the lack of controversy over what has followed after the enormous surge in gun carry permits since 1985. Data from every state that increased carry permit issuance has shown that violence did not increase thereafter.

    11.    In fact, the data shows that - for whatever reason - since 1991, a period in which 39 states allowed law abiding, responsible people to carry concealed

weapons, violent crime has plummeted. In the same period, a huge increase in the number of guns owned has been accompanied by a substantial decrease in homicide rates.

12.  Reliable information on both gun ownership and murder rates in the U.S. are available only for the period from the end of WWII on. The general pattern since WWII is that, decade-by-decade, the number of guns owned by civilians has risen steadily and dramatically. Since 1946 civilian gun ownership in America more than quintupled. Yet the 2005 American murder rate was almost identical to that for 1946, 50 years before, when there were far fewer guns in the hands of civilians. *See* Don B. Kates & Daniel D. Polsby, "Long Term Non-Relationship of Firearm Availability to Homicide" 4 JOURNAL OF HOMICIDE STUDIES 185, 190-191 (2000).

13.  As of 2010 the pattern continues. American gun ownership is now estimated to exceed 300 million. As of late-2010 the just-released FBI crime analysis for 2009 finds another 5% decline in crime generally, with a 7.3% decline in murder and an 8% decline in robbery.

14.  A quintupling of guns since 1946 has been accompanied by both increases and decreases in violent crime. What is clear, however, is that vast increases in gun ownership, and vast increases in carry permit issuance, have not been followed by increased violence or homicide. (*See generally* Don B. Kates, "The Limits of Gun Control: A Criminological Perspective" in Timothy Lytton, ed., SUING THE FIREARMS INDUSTRY: A LEGAL BATTLE AT THE CROSSROADS OF GUN CONTROL AND MASS TORTS (Ann Arbor, University of Michigan Press, 2005)

15.  It is also worth noting that no shall-issue law has ever been repealed.

**CRIMINAL BACKGROUNDS OF VIOLENT CRIMINALS**

16.  Federal law bars firearms acquisition or possession by people convicted of any felony or of certain misdemeanors. It is my understanding that so does California law, and that California requires criminal records be checked

before permitting anyone to even buy a gun; and that such a record check is also required before a permit to carry a gun is issued.

17. These provisions are important because they exclude virtually all people who are likely to commit gun crimes from receiving carry permits.

18. Prof. Zimring is certainly correct about the misuse of handguns in crime. What his declaration omits, however, is that virtually all violent gun crimes, and virtually all murders, are committed by people who cannot legally have guns because they are juveniles or have criminal records. No such people are eligible to receive gun carry permits or to legally have guns at all.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Williamsburg, Virginia, United States on October 13, 2010.

Carlisle E. Moody

# IN THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PERUTA, MICHELLE LAXSON, JAMES DODD, DR. LESLIE BUNCHER, MARK CLEARY, and CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF,<br><br>Defendants. | CASE NO. 09-CV-2371 IEG (BGS)<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of:

**DECLARATION OF CARLISLE E. MOODY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

James M. Chapin
County of San Diego
Office of County Counsel
1600 Pacific Highway
Room 355
San Diego, CA 92101-2469
(619) 531-5244
Fax: (619-531-6005
james.chapin@sdcounty.ca.gov

Paul Neuharth, Jr. (State Bar #147073)
PAUL NEUHARTH, JR., APC
1140 Union Street, Suite 102
San Diego, CA 92101
Telephone: (619) 231-0401
Facsimile: (619) 231-8759
pneuharth@sbcglobal.net

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 18, 2010.

/s/ C.D. Michel
C. D. Michel
Attorney for Plaintiffs