# EXHIBIT A



LEXSEE 2010 U.S. DIST. LEXIS 116272

**UNITED STATES OF AMERICA, Plaintiff, vs. JOHN LIGON, Defendant.**

**3:04-cr-00185-HDM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

*2010 U.S. Dist. LEXIS 116272*

**October 20, 2010, Decided**
**October 20, 2010, Filed**

**PRIOR HISTORY:** *United States v. Ligon, 440 F.3d 1182, 2006 U.S. App. LEXIS 6904 (9th Cir. Nev., 2006)*

**COUNSEL:** [*1] For John Ligon, Defendant (1): Scott N. Freeman, LEAD ATTORNEY, Law Offices of Freeman & Routsis, A.P.L.C., Reno, NV; Alan G. Ellis, Mill Valley, PA; James H. Feldman, Jr., Ardmore, PA.

For USA, Plaintiff: Elizabeth A. Olson, LEAD ATTORNEY, United States Attorneys Office -- District of Nevada, Reno, NV.

**JUDGES:** Howard D. McKibben, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Howard D. McKibben

**OPINION**

ORDER

Defendant moves for a writ of error coram nobis, asking the court to vacate his judgment of conviction for felon in possession of a firearm in violation of *18 U.S.C. § 922(g)(1)*. Defendant asserts the statute is unconstitutional as applied to him. In the alternative, defendant asks the court to declare that continuing application of the *§ 922(g)(1)* disqualification to him is unconstitutional because it violates his *Second Amendment* right to bear arms and his *Fifth Amendment*

right to procedural due process.

On April 11, 2005, the defendant pleaded guilty to one count of felon in possession of a firearm. [1] Defendant's only felony conviction at the time of the indictment was that for stealing government property valued at more than $1,000. The theft conviction was overturned by the Court of Appeals on March 21, 2006, because [*2] the government had failed to introduce evidence that the property had a face, par, or market value of more than $1,000. The government had introduced evidence of archaeological value.

> 1   The indictment had charged thirty counts of felon in possession, and one count of forfeiture. The charges arose from a search of a home owned by defendant in September 2004, after defendant was sentenced and judgment entered on a charge of theft of government property.

Defendant was sentenced on the felon in possession charge on June 13, 2005, and judgment was entered on June 14, 2005. He received probation and a fine, and forfeited a number of firearms. By court order, defendant's probation terminated as of December 1, 2006. Defendant did not file a direct appeal or any other collateral attack on this conviction until the present motion seeking coram nobis relief.

**I. Waiver**

2010 U.S. Dist. LEXIS 116272, *2

The government argues that defendant waived his right to collaterally attack his conviction. The plea agreement pursuant to which defendant pleaded guilty to the § 922(g) charge states that defendant Ligon

> knowingly and expressly waives his right to appeal [his sentence] . . . *and further waives any right to collaterally attack any matter* [*3] *in connection with this prosecution* and his right to appeal any other aspect of his conviction or sentence. The defendant reserves only the right to appeal any sentence imposed to the extent, but only to the extent, that the sentence is an upward departure and outside the range established by the applicable sentencing guidelines.

(Def. Plea Agmt. 2-3) (emphasis added).

A petition for a writ of error coram nobis is a collateral attack on a criminal conviction. *Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994); see also United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Allen, 2009 U.S. Dist. LEXIS 35093, 2009 WL 961468, at *3 (N.D. Cal. 2009)*. Courts will enforce a waiver if "(1) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal . . . and (2) the waiver is 'knowingly and voluntarily made.'" *United States v. Martinez, 143 F.3d 1266, 1270-71 (9th Cir. 1998)*.

Defendant does not contest that the language of the waiver encompasses his petition for a writ of error coram nobis. Defendant argues only that (1) the waiver was not knowingly and voluntarily made, and (2) enforcement of the waiver would result in a miscarriage [*4] of justice.

Defendant argues that his waiver was not knowing and voluntary because he believed that if his underlying felony were reversed that his right to carry arms would automatically be restored. He argues that had he been advised this would not be the case, he would not have agreed to the waiver. This misunderstanding of the consequences, defendant argues, renders his waiver unenforceable.

First, defendant cites a First Circuit case, *United States v. Padilla, 578 F.3d 23, 30 (1st Cir. 2009)* for this last proposition. *Padilla*, however, is distinguishable

from this case. In *Padilla*, the written waiver of appellate rights was straightforward. The judge, however, made misleading statements during the plea colloquy that resulted in confusion as to the effects of the defendant's waiver. Similar facts are not alleged in this case.

In fact, defendant's own declaration confirms that his attorney told him when he pleaded guilty that he was giving up his right to appeal and that the only avenue for reversing his conviction would be through a presidential pardon. (Ligon Decl. P2). Defendant's assumptions about other ways to secure a reversal of his conviction do not render the waiver unknowing [*5] and involuntary.

Second, defendant argues that even if he has waived his right to appeal, the court may consider his contentions where doing so would prevent a miscarriage of justice. *United States v. Gwinnett, 483 F.3d 200, 201 (3d Cir. 2007), cited with approval by United States v. Jacobo Castillo, 496 F.3d 947, 957 (9th Cir. 2007).* [2] While the defendant argues that continuing application of his § 922(g) conviction is resulting in a loss of a fundamental right -- his right to bear arms -- and that therefore enforcement of his waiver would result in a miscarriage of justice, the court is not persuaded. At the time of his arrest, defendant was on release and awaiting self-surrender for his prison term on the theft conviction. He was found in possession of more than thirty firearms, and according to the government at the hearing on defendant's motion, five of those firearms were stolen. He admittedly used the firearms for hunting or as part of a collection. At the time, there was no indication the defendant was using any of the firearms for protection. At the hearing on defendant's motion, the government also asserted that in addition to the firearms, drugs and drug paraphernalia were [*6] found in the house. The defendant received substantial benefits by signing the plea agreement in exchange for waiving his right to file postconviction writs such as the one before the court. In exchange for his waiver the government dismissed twenty-nine felon in possession counts. Under the facts of this case, the court concludes that the defendant's waiver was freely and voluntarily given and that denial of relief will not result in a miscarriage of justice. [3]

> 2  Although the Ninth Circuit in *Jacbo-Castillo* cited *Gwinnet*'s holding with approval, the issue in *Jacobo-Castillo* was whether the circuit court had jurisdiction to hear the defendant's appeal despite his waiver of appellate rights, not under

2010 U.S. Dist. LEXIS 116272, *6

what standard the waiver might be disregarded. Recently, an unpublished opinion stated that the Ninth Circuit has not adopted a "miscarriage of justice" exception to enforcement of valid appeal waivers. *See United States v. Ayala, 316 Fed. App'x 636, at *1 (9th Cir. 2009)*.

3   Avenues of relief available to the defendant include an application for presidential pardon and a petition under *18 U.S.C. § 925(c)* to the extent Congress provides funding for its implementation.

The defendant does not [*7] argue that his petition for relief falls outside the scope of his waiver. A defendant's waiver does not encompass assertions that the statute under which he was convicted is unconstitutional, as such arguments are jurisdictional in nature, *see United States v. Bell, 70 F.3d 495, 497 (7th Cir. 1995)* (citing *United States v. Montilla, 870 F.2d 549 (9th Cir. 1989)* and *Marzano v. Kincheloe, 915 F.2d 549 (9th Cir. 1990))*; *see also United States v. Perlaza, 439 F.3d 1149, 1167 n.21 (9th Cir. 2006)*, although at least one circuit has suggested that as-applied challenges are not jurisdictional, *see United States v. Seay,    F.3d  , 2010 U.S. App. LEXIS 18738, 2010 WL 3489042, at *2 (8th Cir. Sept. 8, 2010)*. Moreover, a defendant waives only that which is "clearly contemplated by, and subject to, his plea agreement waiver." *United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993)*. It is at least arguable that because the right defendant asserts (the individual right to bear arms) did not exist at the time he entered his plea, such right was not subject to his plea agreement waiver. However, the defendant has not raised this issue and the court finds that on the grounds for relief raised by defendant, defendant waived [*8] his right to appeal and is therefore barred from seeking coram nobis relief.

Nevertheless, in order to address all the issues raised in the defendant's motion, the court will consider whether such relief would be available to defendant if he had not waived that right.

## II. Coram Nobis Relief

"Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character." *Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002)*. It may be used to challenge an unlawful or unconstitutional conviction where the defendant is no longer in custody, and may be issued "under circumstances compelling such action to achieve justice." *United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct.*

*247, 98 L. Ed. 248 (1954)*; *Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987)*. The court has the power to issue a writ of error coram nobis pursuant to the All Writs Act, *28 U.S.C. § 1651(a)*. *Matus-Leva, 287 F.3d at 760*.

A defendant seeking coram nobis relief must establish four elements: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of [*9] Article III; and (4) the error is of a fundamental character. *Hirabayashi, 828 F.2d at 604*; *Matus-Leva, 287 F.3d at 760*. Failure to establish any one of the elements is fatal. *Matus-Leva, 287 F.3d at 760*.

The government concedes that defendant can show the first and third elements but argues that he cannot prove the second and fourth because: (1) the conviction is valid and lawful, both as to the *Second Amendment* claim as well as the *Fifth Amendment* procedural due process claim; and (2) defendant unjustifiably delayed in bringing his motion.

## A. Timeliness of Motion

Defendant waited more than four years after his conviction to seek relief -- nearly four years after his underlying predicate conviction was overturned. Defendant asserts he had no basis for an attack until *District of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)* was decided in 2008.

A change in the law that is made retroactive is a valid reason for waiting to file a coram nobis petition. *United States v. Riedl, 496 F.3d 1003, 1007 (9th Cir. 2007)*. The government does not argue that *Heller* is not retroactive, but instead argues that (1) *Heller* did not change the law, and (2) defendant at any rate waited too long to file his petition [*10] after *Heller* was decided.

Before *Heller*, the Ninth Circuit rejected as-applied challenges on the grounds that the *Second Amendment* provided only a collective right. *See Silveira v. Lockyer, 312 F.3d 1052 (9th Cir. 2002)*; *see also United States v. Stewart, 348 F.3d 1132, 1142 (9th Cir . 2003), cert. granted and judgment vacated by 545 U.S. 1112, 125 S. Ct. 2899, 162 L. Ed. 2d 291 (2005), opinion aff'd in relevant part by 451 F.3d 1071 (9th Cir. 2006)*. *Heller* changed the applicable law in that it held the *Second Amendment* provides an individual right. Whether or not

*Heller* is to be applied retroactively, it is clear that defendant could not have legitimately raised the current claim before *Heller* was decided. However, the court need not decide whether defendant's delay of more than a year and a half after *Heller* was issued was a valid reason for not attacking the conviction earlier, as even on the merits, defendant's coram nobis claim must fail.

B. Error of Fundamental Character

I. Reversal of Underlying Felony

Reversal of the felony underlying a felon in possession conviction does not render the felon in possession conviction invalid. *See Lewis v. United States, 445 U.S. 55, 64-65, 100 S. Ct. 915, 63 L. Ed. 2d 198 (1980)* ("[T]o limit the scope of §§ 922(g)(1) [*11] and (h)(1) to a validly convicted felon would be at odds with the statutory scheme as a whole. Those sections impose a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge. . . . It seems fully apparent to us . . . that Congress clearly intended that a defendant clear his status *before* obtaining a firearm.") (emphasis original); *United States v. Marks, 379 F.3d 1114, 1116, 1118-19 (9th Cir. 2004)* ("The focus of the inquiry under §§ 921(a)(20) and 922(g)(1) is whether someone has been convicted of a felony under state law, not whether that conviction is constitutionally valid, nor whether it may be used as a predicate conviction for subsequent state prosecutions.").

While both *Lewis* and *Marks* involved underlying felonies that were subject to collateral attack but had not yet been reversed, the courts have further held that a felon in possession conviction is no less valid where the predicate conviction has been subsequently reversed than it is where the conviction is simply subject to collateral attack. *United States v. McCroskey, 681 F.2d 1152, 1153 (9th Cir. 1982)* (holding that where [*12] defendant succeeded in getting predicate conviction expunged *nunc pro tunc* to a time before he was found in possession of a firearm, his felon in possession conviction remained valid because he had not cleared his status before obtaining the firearm); *Bonfiglio v. Hodden, 770 F.2d 301, 304-05 (2d Cir. 1985)* (same).

Accordingly, the court concludes that the fact that defendant's underlying conviction was reversed did not render the defendant's felon in possession conviction invalid.

ii. *Second Amendment*

The *Second Amendment* provides that "the right of the people to keep and bear arms shall not be infringed." *Section 922(g)(1)* limits that right, by making it unlawful for any person convicted of a felony to possess a gun.

Defendant argues that § 922(g)(1) is unconstitutional as applied, and therefore asks the court to either vacate the judgment or declare the continuing application of the § 922(g)(1) disqualification to him to be unconstitutional. Defendant bases his argument on the Supreme Court's recent holding that the *Second Amendment* provides for an individual right to bear arms. He argues his § 922(g)(1) conviction violates that right.

In 2008, the Supreme Court held that the *Second Amendment* [*13] right to bear arms is an individual right. *Heller, 128 S. Ct. at 2797*. That right, however, is "not unlimited." *Id. at 2799*. The Court cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which are "presumptively lawful." *Id. at 2816-17 & n.26*. Since *Heller*, the Ninth Circuit has reaffirmed the constitutionality of the federal felon in possession statute, stating that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)." *United States v. Vongxay, 594 F.3d 1111, 1114, 1118 (9th Cir. 2010)*.

The Ninth Circuit has clearly held that § 922(g)(1) is facially valid. Therefore, the court turns to the defendant's argument that the statute is unconstitutional as applied to him.

An "as-applied" challenge contends the law is unconstitutional as applied to the litigant's particular circumstance, even though the law may be capable of valid application to others. *Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998)*.

In the wake of *Heller*, virtually all of the federal courts addressing the issue have denied as-applied attacks on the constitutionality of § 922(g)(1) [*14] -- some simply by invoking the presumed lawfulness of felon in possession statutes noted in *Heller*, others by engaging briefly in the as-applied analysis. *See, e.g., United States v. Khami, 362 Fed. App'x 501, 507-08 (6th Cir. 2010); United States v. Gieswein, 346 Fed. App'x 293, 295-96 (10th Cir. 2009); United States v. Radencich, 2009 U.S. Dist. LEXIS 3692, 2009 WL 127648, at *2 (N.D. Ind.*

*2009); United States v. Jones, 673 F. Supp. 2d 1347, 1351-52 (N.D. Ga. 2009)* (rejecting as applied challenge to *§ 922(g)(1)* where defendant had argued that his underlying felony was remote in time (14 years prior) and he was not alleged to have used the gun in an unlawful manner); *United States v. Abner, 2009 U.S. Dist. LEXIS 2494, 2009 WL 103172, at *1 (M.D. Ala. 2009); United States v. Henry, 2008 U.S. Dist. LEXIS 60780, 2008 WL 3285842, at *1 (E.D. Mich. 2008); United States v. Robinson, 2008 U.S. Dist. LEXIS 60070, 2008 WL 2937742, at *2-3 (E.D. Wis. 2008).*

The only federal case defendant cites in support of his claim was vacated and reheard *en banc* by the Seventh Circuit. *See United States v. Skoien, 587 F.3d 803, 808 (7th Cir. 2009), opinion vacated & reh'g en banc granted by 2010 U.S. App. LEXIS 6584, 2010 WL 1267262 (7th Cir. Feb. 22, 2010).* While the original panel decision had found the challenged statute, *§ 922(g)(9)*, unconstitutional, [*15] the *en banc* panel held that the statute did not violate the defendant's *Second Amendment* rights. *United States v. Skoien, 614 F.3d 638, 2010 WL 2735747 (7th Cir. 2010).*

The only other case cited by defendant in which a court found a felon in possession statute to be unconstitutional as applied is from the North Carolina Supreme Court. There, the court held that "[b]ased on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, [the analogous state felon in possession statute] is an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Britt v. State, 363 N.C. 546, 681 S.E.2d 320, 323 (N.C. 2009).*

The court is unable to find any case where it was held that *§ 922(g)(1)* -- or any other subsection of *§ 922(g)* -- was unconstitutional as applied. Even so, because as-applied arguments are factually dependent, the court addresses defendant's argument.

As a threshold matter, the court must determine what level of scrutiny should apply to its analysis. The answer to that question is not clear. [*16] *Heller* did not identify the appropriate level of scrutiny for *Second Amendment* challenges, holding only that rational basis does not apply. As a result, the courts have not agreed on a standard, with some applying strict scrutiny and others intermediate scrutiny. *See, e.g., United States Pettengill,*

*682 F. Supp. 2d 49, 55-57 (D. Maine 2010)* (intermediate scrutiny); *United States v. Engstrum, 609 F. Supp. 2d 1227 (D. Utah 2009)* (strict scrutiny).

A law that burdens the exercise of a fundamental right is subject to strict scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 16-17, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973); United States v. Hancock, 231 F.3d 557, 565 (9th Cir. 2000).* On June 28, 2010, the Supreme Court held that the right to bear arms in self defense is a fundamental right. *McDonald v. City of Chicago, 561 U.S.    , 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)* (slip op. at 44). However, "the right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *McDonald, 561 U.S.    , 130 S. Ct. at 3047, 177 L. Ed. 2d 894 (2010).* Thus, the fundamental right as announced by the Supreme Court relates to the right to keep and bear arms for the purpose of self defense. Courts have held that where [*17] the stated purpose for the firearm is hunting, and not self defense, strict scrutiny does not apply. *See United States v. Walker, 2010 U.S. Dist. LEXIS 39473, 2010 WL 1640340 (E.D. Va. 2010).*

Here, although defendant mentions bearing arms for the purpose of self-defense, the overwhelming evidence is that the defendant possessed the guns for hunting or as part of a collection. Even if the court applies the doctrine of strict scrutiny, however, defendant's argument fails.

To satisfy the strict scrutiny test, a law must be "narrowly tailored to achieve a compelling governmental interest." *Abrams v. Johnson, 521 U.S. 74, 82, 117 S. Ct. 1925, 138 L. Ed. 2d 285 (1997).* Defendant concedes that *§ 922(g)* serves a compelling government interest, but asserts that it does not do so in the least restrictive manner possible. He offers five arguments in favor of his position.

First, his predicate felony conviction was reversed. Second, neither of his crimes involved violence or the use of guns. Third, nothing in defendant's history suggests he is a danger to others; he has never used a firearm to threaten or harm another person. Fourth, guns are important to defendant's life, as he has always been a hunter and gun collector, and now cannot attend family gatherings [*18] that involve hunting. And fifth, at the time defendant was found with the firearms he was in the process of giving his gun collection away.

As discussed, the reversal of defendant's underlying

2010 U.S. Dist. LEXIS 116272, *18

felony does not invalidate his felon in possession conviction. He was under a disability when he was found with firearms. Accordingly, this fact does not call into question the constitutionality of defendant's conviction.

Defendant argues that many felonies are not violent and do not involve the use of guns, and that many people guilty of felonies are not prone to violence, including him. The courts that have addressed this issue have been aware that many felonies are not violent. Yet, they continue to uphold the facial constitutionality of § 922(g)(1). Accordingly, the fact that neither defendant's history nor his felonies were violent does not render § 922(g)(1) unconstitutional as applied to him.

Defendant's possession of guns for hunting or as a collection does not render his conviction constitutionally infirm. Possession for these reasons has not been recognized as a fundamental right, and defendant cites no authority for finding that a law that burdens such possession violates the Second Amendment.

Finally, [*19] the fact that defendant was giving away the guns when he was found in possession of them does not compel a finding that his conviction violates his Second Amendment rights. Defendant had ample time before sentencing on the theft charge in which to properly dispose of his firearms.

Defendant also argues that § 922(g)(1) is overly restrictive because the only way to invalidate a conviction under it is through presidential pardon. An alternate avenue exists in 18 U.S.C. § 925(c), which allows application to the Attorney General for relief from a firearms disability. Defendant argues that Congress recognized that barring every felon from possessing guns is overly restrictive, and that was the purpose for its enactment of § 925(c). While it appears that Congress has not provided funding for the implementation of § 925(c) since 1992, this does not mean that it will not do so in the future. This court could find no decision of a court that has considered the constitutionality of § 922(g)(1) that has found that section unconstitutional because of the unavailability of § 925(c). [4]

4    The court believes that this is a case that

should be considered under § 925(c).

Accordingly, the court is not persuaded [*20] by the defendant's as-applied argument, both as to the conviction itself as well as to its continuing application. As the defendant was under disability when he possessed the weapons, his § 922(g)(1) conviction is lawful and constitutional. Therefore, there is no fundamental error that may be corrected by awarding coram nobis relief even if the court had found defendant had not waived his right to make that claim.

ii. *Fifth Amendment*

The *Due Process Clause of the Fifth Amendment* provides that "no person shall be deprived of life, liberty, or property without due process of law." The government argues that defendant received notice at his arraignment on the § 922(g)(1) charge and an opportunity to be heard at his change of plea and sentencing hearings. Defendant argues that he was never given due process with regard to the continuing impairment caused by his § 922(g)(1) conviction. He cites no authority supporting his contentions that individuals are entitled to due process protections for continuing deprivations.

Defendant did receive notice and an opportunity to be heard during the criminal proceedings for his § 922(g)(1) conviction, and he points to no procedural irregularities in that [*21] process. His own alleged misapprehension about the effect of his guilty plea is not enough to call into question the validity of his plea. His attorney explicitly told him that the only way to overturn his § 922(g)(1) conviction was through a presidential pardon.

For the reasons set forth above, the defendant's motion for a writ of error coram nobis is hereby **DENIED** (#36).

DATED: This 20th day of October, 2010.

/s/ Howard D. McKibben

UNITED STATES DISTRICT JUDGE